GEORGENA L. LONG *vs.* CHARLES GEORGE.

Suffolk.    March 14, 1933. — March 29, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Res Judicata.    Attachment.    Judgment.    Practice, Civil,* Findings by judge.

Where one, claiming to be the owner of property attached on mesne process in a proceeding against another, makes application under G. L. (Ter. Ed.) c. 223, § 114, for a discharge of the attachment as a "person whose property has been attached," the statute authorizes full hearing on the merits and final adjudication of the issue of the ownership of the property at the time of the attachment at the "summary hearing" required; and therefore such an adjudication, made upon such an application, was conclusive in a subsequent proceeding to which the applicant and the plaintiff in the original proceeding were the parties and in which the issue was the ownership of the same property at the time of the attachment. DONAHUE, LUMMUS, & QUA, JJ., dissenting.

The discharge of a mesne attachment of property, upon an application filed under G. L. (Ter. Ed.) c. 223, § 114, by one, not the defendant in the proceeding, who alleged in the application that he was the owner of such property "attached as the property of the defendant," imported a finding that such allegation was true. DONAHUE, LUMMUS, & QUA, JJ., dissenting.

If the discharge of a mesne attachment of property upon an application under G. L. (Ter. Ed.) c. 223, § 114, by one, not the defendant in the proceeding, who claimed to be the owner of the property, was procured by collusion between the applicant and the defendant, but the collusion did not affect the jurisdiction of the court over the application, the discharge and the determination of ownership involved therein could not be attacked collaterally by the plaintiff in a subsequent proceeding between him and the applicant.

BILL IN EQUITY, filed in the Superior Court with a writ of summons and attachment dated February 4, 1931.

The suit was referred to a master. By order of *Goldberg*, J., there were entered an interlocutory decree confirming the master's report and a final decree dismissing the bill. The plaintiff appealed from the final decree.

The case was argued at the bar in March, 1933, before *Rugg*, C.J., *Wait, Field, Donahue,* & *Lummus*, JJ., and after the death of *Wait*, J., was submitted on briefs to *Crosby, Pierce,* & *Qua*, JJ.

*R. B. Owen,* (*E. R. Anderson* with him,) for the plaintiff.

*S. W. Saltmarsh*, for the defendant.

FIELD, J. This is a suit in equity brought in the Superior Court by Georgena L. Long against Charles George. Charles George had previously brought in the Municipal Court of the City of Boston against George A. Long, father of the present plaintiff, an action at law to recover rent under a written lease of a store in Boston and had caused an attachment to be made on January 15, 1930, of goods in the store as the property of George A. Long. Charles George obtained a judgment in this action and the property attached was sold on execution at public auction on March 31, 1930, to said Charles George. The present plaintiff alleges in her bill that she was the owner of the property so attached and sold, that George A. Long had no right, title or interest therein either at the time of the attachment or at the time of the sale, and that the sale transferred no right, title or interest therein

to the defendant as purchaser, and prays for an order that he deliver to her the property in question and for damages. The case was referred to a master who made a report in which he found facts in detail and found specifically that the goods sold on execution were at that time the property, of George A. Long and not the property of the plaintiff. By an interlocutory decree the plaintiff's exceptions to the report were overruled and the report was confirmed, and by a final decree the bill was dismissed with costs. The plaintiff appealed from the final decree.

The findings of the master include findings in regard to the action at law brought by Charles George against George A. Long. In addition to the facts already stated the master found that while the action at law was pending the present plaintiff "filed a petition to discharge the attachment . . . [therein] setting forth that she was the lawful owner of the material held under said attachment," and that this "petition was amended, heard and allowed on February 28; 1930." He found that the "goods sold at the execution sale" were the same as the "goods listed by the plaintiff as the subject matter of her petition to dissolve the attachment."

The plaintiff contends that the order discharging the attachment in the action at law was an adjudication, binding upon the defendant in the present proceeding, that the plaintiff was the owner, at the time of the attachment and at the time of the sale on execution, of the property involved in this suit.

This contention is sound with respect to the time of the attachment. The subject matter of the proceeding to discharge the attachment and the parties thereto were within the jurisdiction of the court. The petition was authorized by G. L. (Ter. Ed.) c. 223, § 114, which is as follows: "If an excessive or unreasonable attachment is made on mesne process, the defendant or person whose property has been attached may apply in writing, in any county, to a justice of the court to which such process is returnable, for a reduction of the amount of the attachment or for its discharge; and such justice shall order a notice to the plaintiff, or, if the plaintiff is a non-resident, to his attorney, which shall

be returnable before himself or any other justice of the same court as speedily as circumstances permit. If, upon a summary hearing of the parties, it is found that the attachment is excessive or unreasonable, the justice shall reduce or dissolve the attachment or order a part of the goods or estate to be released." In *Shea* v. *Peters*, 230 Mass. 197, it was decided that a person not a party to the original action whose property had been attached as the property of the defendant therein can invoke the aid of this statute. And both the present plaintiff and the present defendant were parties to the proceeding for the discharge of the attachment.

The Municipal Court of the City of Boston (see G. L. [Ter. Ed.] c. 218, § 1) is subject to the provision applicable to district courts generally that "District courts shall be courts of record. They shall be courts of superior and general jurisdiction with reference to all cases and matters in which they have jurisdiction, and . . . like presumption shall be made in favor of proceedings of such courts as would be made in favor of proceedings of other courts of superior and general jurisdiction." G. L. (Ter. Ed.) c. 218, § 4. The master states that the petition was "heard," but, even apart from this recital, it is to be presumed that the proceedings were regular and, consequently, that there was compliance with the requirement of the statute that there be "a summary hearing of the parties." *Bullock, petitioner*, 254 Mass. 14, 17. *Rosen* v. *United States Rubber Co.* 268 Mass. 403, 406.

The order discharging the attachment did not fail to be conclusive on the parties thereto because it was a decision after only a "summary hearing." That proceedings for discharging attachments are characterized as "summary" does not necessarily prevent decisions therein being conclusive adjudications with respect to matters within the scope of the proceedings. Compare G. L. (Ter. Ed.) c. 239. *Edwards* v. *Columbia Amusement Co.* 215 Mass. 125. The reasons for holding decisions in summary proceedings not conclusive upon the same parties in other cases are that such proceedings do not permit full hearings on the merits and are not reviewable by an appellate court. See Freem. Judg-

ments (5th ed.), §§ 667–668, 843–845. See also *McCarthy* v. *William H. Wood Lumber Co.* 219 Mass. 566, 569.

These reasons are not applicable to a proceeding for the discharge of an attachment brought by a person, other than the defendant in the original action, alleging his ownership of the property attached. Nothing in the statute authorizing such a discharge or in the nature of the proceedings authorized thereby precludes full hearings on the merits of the questions involved. The provision in the statute (G. L. [Ter. Ed.] c. 223, § 114) for a "summary hearing" must be read with the provision that the notice ordered upon an application for discharge of an attachment "shall be returnable . . . as speedily as circumstances permit." The obvious purpose of these provisions is to provide for a speedy hearing. But a speedy or summary hearing does not imply an inadequate hearing. Compare G. L. (Ter. Ed.) c. 248, §§ 4, 15. The provision of the statute authorizing an application for discharge of an attachment by a person other than the defendant "whose property has been attached" implies that the issue to be determined on such an application is the ownership of the property by such person. And it is not to be thought that the Legislature intended that such person should continue to be deprived of rights in the property attached or that the plaintiff should be deprived of rights under the attachment upon less than a full hearing. This is true though the question in regard to his rights is subsidiary to the main question in the action in which the attachment was made. See *Shea* v. *Peters*, 230 Mass. 197, 200–201. Nor does the absence of a provision for jury trial indicate that a full hearing is not contemplated. Such a trial where, as here, not required for other reasons is not essential to a full hearing. But the plaintiff in an action in which an attachment is made is not entitled to such a trial on the issue of his right to an attachment lien, even if the ownership of the property attached is thereby drawn in question (*Shea* v. *Peters*, 230 Mass. 197, 200–201; see *Stockbridge* v. *Mixer*, 215 Mass. 415, 418), and a third person asserting ownership of the property by applying for the discharge of an attachment thereon elects this remedy instead of proceeding by an

action of replevin in which he could have a jury trial (G. L. [Ter. Ed.] c. 247, §§ 7, 19, *Robinson* v. *Besarick*, 156 Mass. 141, 143), or by a suit for equitable replevin if the goods have been "so secreted or withheld that they cannot be replevied." G. L. (Ter. Ed.) c. 214, § 3 (1). Furthermore the decision of a trial judge on an application to discharge an attachment so far as it involves questions of law is reviewable by an appellate court. Such decisions made in the Superior Court are reviewable by this court. *Richardson* v. *Greenhood*, 225 Mass. 608, 610. *Bullock, petitioner*, 254 Mass. 14. See also *Shea* v. *Peters*, 230 Mass. 197. And they may be reviewed under a somewhat different form of procedure when made in the Municipal Court. G. L. (Ter. Ed.) c. 231, §§ 108, 109. The fact that a proceeding for the discharge of an attachment is not an independent proceeding does not prevent a matter decided therein being *res judicata*. See *Hanson* v. *Hanson*, 258 Mass. 45, 47. Cases in other jurisdictions are in conflict. See cases collected in Freem. Judgments (5th ed.), § 843. See also *Buck* v. *Colbath*, 3 Wall. 334, 347; *Citizens State Bank of New Sharon* v. *Haworth*, 208 Iowa, 1100, 1106. So far as the cases opposed to the result here reached are not distinguishable from this case we are not inclined to follow them.

That the ownership by the present plaintiff at the time of the attachment of the property involved in this suit was an issue tried and determined on the plaintiff's application for discharge of the attachment appears from the record of that proceeding without resort to extrinsic evidence except for the purpose of identifying the property. This plaintiff's only standing to make the application, according to the terms of the statute, was as a "person whose property has been attached," and her allegations in the written application met this jurisdictional requirement by stating that "the personal property of the petitioner was attached as the property of the defendant, George A. Long," and by stating further that she "purchased said property from the defendant, George A. Long, by bill of sale dated March 6, 1929." The discharge of the attachment on this application imports a finding that the allegation of the present plaintiff's owner-

ship of the property attached was sustained. *Biggio* v. *Magee,* 272 Mass. 185, 187. *Franklin* v. *North Weymouth Cooperative Bank,* 283 Mass. 275, 279–280. And the master found that the property involved in the two proceedings was the same. The issue, therefore, was different from the issue ordinarily passed upon in a proceeding for the reduction or discharge of an attachment on property of the defendant in the action. The scope of this decision is confined to the facts here disclosed and no intimation is made as to the effect of a proceeding founded on an application by the defendant for the reduction or discharge of an attachment on his property.

The present defendant contends that the discharge of the attachment was obtained by collusion between the present plaintiff and the defendant in the action in the Municipal Court, and that consequently the issue decided in the proceeding for such discharge cannot be treated in this suit as *res judicata.* But the facts relied on to show collusion did not affect the jurisdiction of the Municipal Court of the proceeding to discharge the attachment, and the present defendant was a party thereto and was not prevented from appearing and asserting his rights. The discharge, therefore, cannot be attacked by him collaterally in this suit on the ground of collusion. *Boston & Worcester Railroad* v. *Sparhawk,* 1 Allen, 448. *Gorman's Case,* 124 Mass. 190. *Joyce* v. *Thompson,* 229 Mass. 106.

The question remains as to the effect of the adjudication of ownership of the goods in the present plaintiff at the time of the attachment, January 15, 1930, on the issue of ownership at the time of the sale on execution, March 31, 1930. In the absence of findings of fact showing a change of ownership from the present plaintiff to the defendant in the action in the Municipal Court the inference is to be drawn that ownership continued in the present plaintiff. *Magee* v. *Scott,* 9 Cush. 148. *Wylie* v. *Marinofsky,* 201 Mass. 583, 584. There are no specific findings showing such a change of ownership. Nor is such a change of ownership to be implied from the general findings that at the time of the execution sale the goods belonged to the defendant in the action in the Municipal Court, "no change in ownership

having taken place," and not to the present plaintiff. Obviously the general findings read in the light of the master's report as a whole are based on absence of ownership in the present plaintiff at the time of the attachment and not on any transfer of ownership from her thereafter. Indeed the present defendant does not contend that there has been such a transfer of ownership.

In view of the conclusion reached it is not necessary to consider other contentions of the plaintiff. The defendant, on the other hand, makes no contention that the bill was dismissed rightly on any ground other than that the ownership of the goods sold at the execution sale was then in the defendant in the action in the Municipal Court and not in the present plaintiff.

The master, having made a finding that the goods sold on execution sale were not the property of the plaintiff, made no finding as to damages.

It follows that the final decree must be reversed and a final decree entered ordering the defendant to deliver to the plaintiff the goods sold at the execution sale, and for such damages, if any, as the plaintiff may be found to have sustained.

*Ordered accordingly.*

DONAHUE, J. Mr. Justice Lummus, Mr. Justice Qua and I find ourselves unable to agree with the opinion.

We believe that the statute in question, properly interpreted, manifests the legislative intent that at a hearing upon an application for the reduction or the discharge of an attachment, on the ground that it is excessive or unreasonable, the matter of the title to the attached property shall not be finally adjudicated.

From first to last the statutes dealing with the subject show a dominant purpose that relief against oppressive attachments be speedily afforded and that the hearing upon an application for such relief be of a summary nature and not a complete hearing such as is given under ordinary procedure. The original statute (St. 1851, c. 233, § 96) provided relief for the defendant alone and for him only in the case of an attachment which a judge, "summarily hearing"

the defendant's application, should find to be excessive. Some verbal changes not here material were made in compilations of the statutes (Gen. Sts. c. 123, § 103; R. L. c. 167, § 110). St. 1897, c. 460, gave a defendant relief also from an "unreasonable" attachment with the right in the judge "in his discretion [to] order such attachment to be discharged." It was not until the passage of St. 1909, c. 190, more than fifty years after the passage of the original statute, that one not a party to the action was given relief from oppressive attachments. The title of that statute was: "An Act relative to the dissolution of real estate attachments where the record title of the property attached is in the name of a person other than the defendant." The Legislature expressed such purpose as it had simply by making an addition to the existing statute. It inserted in that statute after the word "defendant" in the phrase: "If an excessive or unreasonable attachment is made on mesne process, the defendant may apply . . . ," the words "or person whose property has been attached." There has since been no change in the wording of the statute. From the legislative history of the statute, and from its language, the intent is adequately manifested that a third party applying for the dissolution or reduction of an attachment should stand on no other or better footing than a defendant who makes such an application. *Shea* v. *Peters*, 230 Mass. 197, 199. We think that no different construction can be given to the language in the one case than in the other, and that no construction as to the character or the consequences of the prescribed summary hearing should be adopted without consideration of the operation and effect of such construction when it is the defendant, as well as when it is a third party, who makes application for the reduction or dissolution of an attachment.

While in some jurisdictions leave of court must be obtained before making an attachment, in this Commonwealth by purchasing and filling out a blank form of writ, a plaintiff, without any application to the court, may cause an attachment of the property of another to be made which is manifestly excessive and utterly unreasonable. The harm done

to one thus oppressed is so instant, and may be so serious, that his right to bring another lawsuit to recover damages for the wrong done, or to regain possession of his property, would afford wholly inadequate redress. The statute with which we are here concerned provides the only control which a court has over attachments made under the writs which it issues. The statute gives to any member of the court from which a writ has issued the power to act speedily and to act summarily in order to right the wrong resulting from the abuse of a writ which bears the signature of the clerk of that court and the imprint of the court seal. The sole purpose of the statute manifestly is to furnish a method by which the courts' power may be invoked and relief be summarily given from improper attachments. In view of that purpose, in our opinion, the statute cannot properly be construed as authorizing, on a simple application asking merely the relief which the court under the statute is empowered to give, the trial and the final adjudication of other matters, which would obviously tend to delay or thwart the accomplishment of that imperative purpose.

An attachment on mesne process, however long it may exist, never works a change in the title to the property attached; that result comes in an action at law only under the authority given by an execution issuing after judgment for the plaintiff. The attachment of property does no more than create "a qualified custodianship by the law" during the pendency of the action to which the attachment is incidental and subsidiary. *Shea* v. *Peters*, 230 Mass. 197, 201. *Richardson* v. *Greenhood*, 225 Mass. 608. It is with that temporary custody, and not with the matter of title, that the statute is concerned. The relief from unreasonable attachments which the statute intends to provide would be belated and ineffective if the comparatively simple determination of the matter of the reasonableness of continuing the temporary custody of the law over the attached property should be held to entail as well a trial of the question of title, with all the time usually taken for the final adjudication of such a question. The whole spirit of the statute negatives such a construction.

The statute manifestly contemplates that if an attachment is excessive or unreasonable, relief shall be not only speedily but shall be summarily given. The procedure provided by the statute differs significantly from ordinary procedure in the courts. It is begun not by a petition or a motion but by an application. This need not be formally presented to a court but may be made to any justice of the court from which the writ issued, in any county, that is, to the justice as an individual, wherever or whenever he may be found. The justice has no discretion but must order notice to the plaintiff returnable before himself or any justice of the court "as speedily as circumstances permit." If the plaintiff is a nonresident the notice may be given to his attorney. The application may be presented, notice made returnable, hearing had and the matter determined before the return day of the writ. *Richardson* v. *Greenhood,* 225 Mass. 608. Having provided an applicant with an unusually speedy method for obtaining, not a trial on issues defined by pleadings, for there are none, but a hearing on his request for relief from an oppressive attachment, the statute goes farther and defines the character of that hearing. It must be summary. It must therefore concern itself only with those things which are essential to the objective of the statute: that is, with the propriety of the amount of the attachment and with the reasonableness of the attachment. The mandate of the Legislature would not be obeyed if the hearing on the application were held to include, and to furnish the opportunity for, the determination and the final adjudication of other matters than those stated in the statute: the amount and the reasonableness of the attachment. There is no analogy between the statute governing this proceeding and G. L. (Ter. Ed.) c. 239, which provides what is styled in the heading of the chapter a "summary process for possession of land." That statute contains special provisions for the giving of an appeal bond and as to its contents, a limited time for entry of an appeal, a stay of proceedings and other departures from the procedure in law suits generally; and in that sense the process itself may be termed summary. But it is to be noted that there is no requirement as to the

character of the hearing. A case brought under that statute must be tried in the same manner as any other action at law. A summary trial is not prescribed or authorized by that statute. There can be no "summary hearing" in a case brought under it.

The construction adopted by the opinion we believe to be contrary to that which has been uniformly given in our courts when passing upon applications for the reduction or dissolution of attachments and unfortunate in its practical results, some of which are here mentioned. A trial finally determinative of the question of title to property is apt to be long and complicated. Some evidence, sufficient to give one applying to have the court's custody of property under attachment terminated a standing to ask for its reduction or dissolution, is ordinarily available. A small amount of evidence may be sufficient to satisfy a court, the process of which is alleged to have been abused, that the applicant is not an intermeddler but shows such an interest in property which has been attached as to be entitled to ask that the court surrender its custody. But evidence necessary if there is to be a full trial with a final determination of the question of title often cannot hastily be obtained by the attaching plaintiff or even by an actual owner. The hearing must be speedily held, as the statute requires, if the remedial purpose of the statute is to be accomplished. The time necessarily taken for adequate preparation by both parties and for a complete trial of title would always delay, and often defeat, that purpose. As we construe the statute, it manifests the legislative intent that no opportunity is afforded by the summary hearing prescribed, for a full trial and final determination of the matter of the applicant's title.

The statute itself contains no provision whereby a party aggrieved may as of right obtain a review. It has been said that if there is any method by which a party may procure the review of a ruling made at such a hearing, other than through a report by the judge, the procedure, if the suit were brought in the Superior Court, "would be to file a bill of exceptions, which, if allowed, would await the stage of final

disposition of the case, when it might be brought here."
*Richardson* v. *Greenhood,* 225 Mass. 608, 610. If in such a
case the judge ordered an unreasonable attachment dis-
solved, the plaintiff, by the filing of a bill of exceptions and
its allowance, would be able to continue the custody of the
court over the property attached until the final disposition
of the main action. The practical result would be the same
as if no application had been made or hearing held. In any
event, even if the judge could be persuaded, though he could
not be compelled, to report the matter, by reason of the
time which must necessarily elapse before it could be brought
to this court for a review, any relief here obtained would
generally come too late. The harm unjustly done to an
owner's credit, to his right to dispose of his own property
and to his solvency, by a long existing attachment immod-
erate in amount and made without reason, is highly oppres-
sive and might well cause his ruin. The questions, whether
an attachment is too large or is unreasonably made, are
simple and capable of speedy determination. Their decision
would rest largely if not wholly in the discretion of the judge
and would rarely afford a party desirous of delay plausible
ground for review if we assume (although we do not believe)
that the action of a judge on an application under the statute
is reviewable as of right. But the relief provided by a process
intended to be speedy, at a hearing intended to be summary,
would be so long delayed as to be ineffective if there must be
a complete trial of the matter of the applicant's title, with all
the possibilities of raising law questions for review which lie
in such a subject.

The hearing prescribed by the statute does not permit of a
jury trial. So far as the attachment itself is concerned and its
retention, modification, or dissolution, the failure to furnish
the opportunity for a jury trial is not a deprivation of con-
stitutional rights. The reasons as adequately stated in
*Shea* v. *Peters,* 230 Mass. 197, are that the process of attach-
ment is statutory, "preliminary or subsidiary to the main
question, which is the establishment of the debt or damage
alleged . . . . It is both in form and in substance merely
a qualified custodianship by the law, for the security of a

creditor, over property in which the debtor is alleged to have an interest." These reasons do not support a construction that a determination of title made at a summary hearing, where there is no opportunity for a jury trial, is binding when the question of title to the same property arises between the same parties in proceedings like the present, where neither party bases his claim of title on the attachment. Ordinarily when the title to property is to be established there is a right to a trial by jury. The fact that here no jury trial can be had on the question of the applicant's title tends to indicate that it was not the intention of the Legislature that a final adjudication of that question should be had in proceedings under the statute.

A defendant who has made application to have an attachment in a considerable amount reduced or dissolved, generally contends at the hearing that he owes the plaintiff little or nothing at all. If he is right in his contention the attachment is excessive or unreasonable. If the hearing, which the statute requires to be "summary," is, however, as the opinion holds, a "full hearing," such a defendant must be given the right to prove that he owes the plaintiff little or nothing and the plaintiff the full right to introduce evidence to the contrary. Thus in the determination of the subsidiary matter of the attachment there would need to be the equivalent of a trial on the merits of the case, otherwise the defendant would not be given a full hearing. The statute does not provide that a defendant whose property has been attached has the right, by applying for a dissolution of the attachment, to have his case advanced for trial over all other earlier cases, and thus in one hearing to have a determination of the merits of the case and of the propriety of the attachment. We think that the defendant has no such right and that the statute does not contemplate that there should be such duplicate hearings.

The plaintiff in this suit contends that the order entered at the summary hearing on her application for the dissolution of the attachment was a bar to any defence and required the judge of the Superior Court to disregard the master's findings that she never had title to the property and that

she was engaged with the defendant in the original action in a fraudulent scheme to defeat the attachment. She here makes that contention and the burden is on her to prove that the matter of her title was in fact fully tried and conclusively determined at the summary hearing. The only prayer in her application was that the attachment be dissolved. That prayer was answered by the order dissolving the attachment, and she thereby obtained everything she sought and everything to which in such a proceeding she could be entitled. Nothing of the proceedings at the summary hearing is before us except the application and the bare fact that the attachment was dissolved. No extrinsic evidence with reference thereto appears to have been introduced before the master and he made no finding that the question of the applicant's title was there heard and determined. Whether any evidence was there introduced or whether the plaintiff in the original action was there present or represented, the extent of the hearing, the matters considered and the basis of the judge's order, do not appear. In view of the summary character of any hearing which can be had under the statute, which does not intend that the question of the applicant's title shall be finally and conclusively determined, and in view of the practice of the courts, with authority of the statute, to dispose summarily of such applications, we do not think that it can here be "presumed" that on the plaintiff's application there was in fact such an adjudication.

The doctrine of *res judicata* does not apply to an order made on an interlocutory or summary motion where no adequate opportunity was afforded to litigate the matter. Such an order does not bar the consideration and determination of that matter if it arises between the same parties in a later proceeding. *Herd* v. *Tuohy,* 133 Cal. 55. *Proctor* v. *Cole,* 104 Ind. 373. *Cilley* v. *Limerock Railroad,* 115 Maine, 382. *Easton* v. *Pickersgill,* 75 N. Y. 599. *Humboldt Exploration Co.* v. *Fritsch,* 150 App. Div. (N. Y.) 90. *Sanderson* v. *Daily,* 83 N. C. 67. See *Cinamon* v. *St. Louis Rubber Co.* 229 Mass. 33. This is the general rule as to orders on motions to dissolve or reduce attachments. *Citi-*

*zens State Bank of New Sharon* v. *Haworth,* 208 Iowa, 1100. *Blair* v. *Anderson,* 58 Kans. 97. *Bennett* v. *Denny,* 33 Minn. 530. *State* v. *Bierwirth,* 47 Mo. App. 551. *Brunson* v. *Merrill,* 17 Okla. 44. See *Buck* v. *Colbath,* 3 Wall. 334. We think that the manifest purpose of the statute, by authority of which the present plaintiff procured the dissolution of the attachment made in the earlier proceeding, compels the application of that rule in the present case. The causes of action in the application for dissolution of the attachment and in the present proceeding were not the same. In the former proceeding the issue was the existence of an unreasonable attachment while here it is the plaintiff's title to the property in question. The order on the application to dissolve the attachment is a bar in this later suit only as to such matters as were actually tried and determined in the earlier proceeding. *Foye* v. *Patch,* 132 Mass. 105, 110–111. *Hanzes* v. *Flavio,* 234 Mass. 320, 329. *Eastman Marble Co.* v. *Vermont Marble Co.* 236 Mass. 138, 148. Since under the statutory procedure there was no opportunity for a full hearing and final determination of title on the application for dissolution of the attachment, there was no adjudication of that question by the order dissolving the attachment which bars the consideration and determination of that question in the present suit.