THE SUMMIT FIDELITY AND SURETY COMPANY *vs.* COMMISSIONER OF INSURANCE.

Suffolk.    December 9, 1955. — January 31, 1956.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & WHITTEMORE, JJ.

*Insurance,* Revocation of license, Foreign company, Surety company. *Equity Jurisdiction,* Review of action of commissioner of insurance. *Constitutional Law,* Due process of law. *Moot Question. Words,* "Summarily," "Practice."

A proceeding by a foreign insurance company for a review of a revocation of the company's license to do business in Massachusetts by the commissioner of insurance did not become moot upon the expiration of the period of the license where the company's application for a renewal of its license for the ensuing period was denied by the commissioner on the ground that it then held no outstanding valid license.   [478]

All constitutional requirements of due process of law were met by statutes applied and procedures adopted by the commissioner of insurance in revoking the license of a foreign insurance company to do business in Massachusetts and by a single justice of this court in a proceeding by the company for a review of the commissioner's action.   [478]

The provisions of §§ 18 and 19 of G. L. (Ter. Ed.) c. 175A, inserted by St. 1947, c. 641, as in force prior to the effective date of the State administrative procedure act, applied to a revocation by the commissioner of insurance, acting under c. 175, § 5, as amended by St. 1933, c. 107, § 2, of the license of a foreign insurance company to do business in Massachusetts on the ground that it failed to file its rates and premium charges as required by c. 175A, and to review of such revocation.   [479–480]

A foreign insurance company whose license to do business in Massachusetts was revoked by the commissioner of insurance on the ground of

violations of G. L. (Ter. Ed.) c. 175, as specified in his written notice to the company of his action, was not entitled, at least prior to the effective date of the State administrative procedure act, to a preliminary hearing by the commissioner in addition to the review of his action by this court provided by c. 175, § 5, as amended by St. 1933, c. 107, § 2. [480–481]

The provision of G. L. (Ter. Ed.) c. 175, § 5, as amended by St. 1933, c. 107, § 2, that the questions involved in a review by this court of action of the commissioner of insurance shall be heard and determined "summarily" does not imply an inadequate hearing. [481]

The fact that the commissioner of insurance, before revoking the license of a foreign company to do business in Massachusetts, chose to hold a hearing which he was not required to hold could not operate to make a review of his action by this court under G. L. (Ter. Ed.) c. 175, § 5, as amended by St. 1933, c. 107, § 2, a mere examination of the proceeding before him rather than an original judicial trial. [482–483]

Evidence that a foreign insurance company issuing bail bonds in Massachusetts required its licensed agent here to enter into an agreement to indemnify it against loss on bail contracts which the agent negotiated, that it procured a person who was not its licensed agent to underwrite the agent's indemnity agreement with a substantial cash deposit, and that such person solicited bail bond customers and kept part of the records which were kept, warranted a finding by the commissioner of insurance under G. L. (Ter. Ed.) c. 175, § 5, as amended by St. 1933, c. 107, § 2, that the company was engaged in unsound and improper business "policies or methods," and, upon making a finding to that effect, he was required by § 5 to revoke the company's license to do business here. [483–484]

Revocation by the commissioner of insurance of the license of a foreign insurance company to do business here should be sustained in a proceeding for review under G. L. (Ter. Ed.) c. 175, § 5, as amended by St. 1933, c. 107, § 2, upon a determination of the existence of certain grounds requiring the revocation and stated in the commissioner's notice of revocation, even if all the grounds stated in the notice were not determined to exist. [484]

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on April 18, 1955.

The case was heard by *Counihan, J.*

*Samuel H. Lewis,* (*Alan L. Lewis & Herbert D. Lewis* with him,) for the petitioner.

*Arnold H. Salisbury,* Assistant Attorney General, for the respondent.

WHITTEMORE, J. The respondent, commissioner of insurance (hereinafter called commissioner), by letter of March 25, 1955, to the petitioner, The Summit Fidelity

and Surety Company (hereinafter called Summit), revoked Summit's license to do business in Massachusetts, on grounds specified therein, effective April 15, 1955. Summit thereupon, on April 18, 1955, filed this petition for a review of the commissioner's action stating that it was filed in accordance with G. L. (Ter. Ed.) c. 175, § 5.[1]

The case by agreement of the parties was heard by a single justice of this court on the testimony taken before the commissioner at a hearing held by him prior to issuing his order, the exhibits at that hearing, and two additional exhibits.

The single justice found that "the ground for the revocation of the license of the company as specified by the commissioner exists and was warranted by the evidence which he heard." This is Summit's appeal from the final decree of May 23, 1955, dismissing the petition.

The case is not moot. Summit's application for a renewal of its license for the year beginning July 1, 1955, was denied for the reason that Summit holds no outstanding valid license. See *Kenworthy & Taylor, Inc.* v. *State Examiners of Electricians*, 320 Mass. 451.

There was no error.

All constitutional requirements are met by the applicable statutes and the procedures adopted.

Since we find that all requirements of due process are met as for any citizen, we need not pause to consider how far the power to exclude foreign corporations may be called into operation to support such a statute as G. L. (Ter. Ed.) c. 175, § 5, in the light of constitutional limitations. See *S. S. White Dental Manuf. Co.* v. *Commonwealth*, 212 Mass.

---

[1] General Laws (Ter. Ed.) c. 175, § 5, as amended by St. 1933, c. 107, § 2, provides inter alia for notice of suspension or revocation with statement of the ground, and that "A company aggrieved by a revocation or suspension of its license hereunder, may within ten days from the effective date of such revocation or suspension file a petition in the supreme judicial court for the county of Suffolk for a review of such action of the commissioner. The court shall summarily hear and determine the question whether the ground for revocation or suspension specified in the notice of the commissioner exists and may make any appropriate order or decree. If the order or decree is adverse to the petitioning company it may within ten days therefrom appeal to the full court . . . ."

35, 47, affirmed 231 U. S. 68, 83; *Oliver* v. *Liverpool & London Life & Fire Ins. Co.* 100 Mass. 531, 538; *Security Mutual Life Ins. Co.* v. *Prewitt,* 202 U. S. 246.

Summit contends that the review provided by c. 175, § 5, as it stood unaffected by G. L. (Ter. Ed.) c. 30A[1] is for a reëxamination of a proceeding already concluded rather than for a new trial. For reasons hereinafter stated we do not agree as to review had only under c. 175, § 5. However G. L. (Ter. Ed.) c. 175A, § 19, inserted by St. 1947, c. 641, § 1 (read with § 18), at all times material herein, has called for such more limited review (see *Insurance Co. of North America* v. *Commissioner of Insurance,* 327 Mass. 745, 753, construing like provisions of c. 174A), and those sections we hold to be applicable to the first ground of revocation specified in the commissioner's notice of March 25, 1955. We also hold that there was adequate trial of this ground before the commissioner so that the proceedings so far as this ground is concerned had been properly held to permit a limited review in this court. Summit as to this ground was not confronted in this court with a new charge as to which it had no opportunity for a full trial.

General Laws (Ter. Ed.) c. 175A is entitled "Casualty and Surety Rate Regulatory Law" (§ 1). Section 18 provides: "Any person or organization wilfully violating any provision of this chapter shall be punished by a fine of not more than five hundred dollars for each such violation. Such penalty may be in addition to any other penalty provided by law. The commissioner may suspend the license of any rating organization or insurer which fails to comply with an order of the commissioner within the time limited by such order . . . . No license shall be suspended or revoked except upon a written order of the commissioner, stating his findings, made after a hearing held upon not

---

[1] All proceedings below were ended prior to July 1, 1955, which was the effective date of the State administrative procedure act (G. L. [Ter. Ed.] c. 30A, inserted by St. 1954, c. 681, § 1, effective date fixed by § 22). The question whether §§ 13 and 14 of that act modified the operative effect of G. L. (Ter. Ed.) c. 175, § 5, in respect of hearings prior to revocation of a license and the extent of the review in this court is not presented by this case.

less than ten days' written notice to such organization specifying the alleged violation."

Section 19 (c) of c. 175A, prior to its amendment[1] by St. 1954, c. 681, § 19, provided, in part, "Any order or decision of the commissioner under authority of this chapter shall be subject to review, *which shall be on the basis of the record of the proceedings before the commissioner* and shall not be limited to questions of law, by appeal to the supreme judicial court at the instance of any party in interest" (emphasis added).

There is no express provision in c. 175A for revocation of a license. Such, however, is found in c. 175, § 5. The effect of c. 175A, § 18, is to require a hearing by the commissioner, before acting under c. 175, § 5, to revoke a license for a violation of c. 175A.

The first ground for revocation specified in the notice of March 25, 1955, was that "On the testimony before me, I am satisfied that . . . [Summit] wilfully failed to file its rates and premium charges with the insurance department as required by law." This essentially was the same as one of the grounds specified in the commissioner's preliminary notice of November 23, 1954, namely, "(a) The Company has wilfully failed to file rates as required by Chapter 175A . . . ." This was manifestly a charge of violation of c. 175A, and §§ 18 and 19 apply to the revocation of Summit's license on this ground.

We now come to specified grounds for revocation which are not violations of c. 175A. Three of these (numbers 2, 4, and 6) were newly specified in the notice of March 25, 1955, the facts underlying them having come to light at the preliminary hearing. We hold as to these that at least prior to July 1, 1955, there was no provision for or need for a trial by the commissioner before the review in this court.

---

[1] As amended the pertinent paragraph of § 19 (c) reads, "Any order or decision of the commissioner under authority of this chapter shall be subject to review, which shall be on the basis of the record of the proceedings before the commissioner, by appeal to the supreme judicial court at the instance of any party in interest. The order or decision shall be reviewed in accordance with the standards for review provided in paragraph (8) of section fourteen of chapter thirty A."

The statute provided for all the trial that was required and the actual procedure adopted was fully adequate.

The review afforded by c. 175, § 5, unaffected by c. 30A or by c. 175A or by a like statute, is similar to that given by c. 175, § 132, as amended by St. 1933, c. 101, § 1,[1] in respect of disapproval of policy form, and the addition here of the direction to proceed summarily does not change its essence.

We said in respect of § 132 as it was embodied in St. 1907, c. 576, § 75, "The authority for a so called review by this court is simply a provision for an original judicial proceeding which an insurance company may bring before a court of law, to ascertain whether its action in establishing the form of its policy is legal. . . . It is a convenient and proper method of settling the rights of the company and of the people, by a regular trial of the disputed question whether the company, in its plan for conducting its business, is within the statute. . . . We see no constitutional objection to this part of the act." *New York Life Ins. Co.* v. *Hardison*, 199 Mass. 190, 198. Compare *Massachusetts Bonding & Ins. Co.* v. *Commissioner of Insurance*, 329 Mass. 265, 273.

The requirement to hear and determine the questions summarily means that the court shall proceed with expedition and take care that formalities do not cause delay. "[A] speedy or summary hearing does not imply an inadequate hearing." *Long* v. *George*, 290 Mass. 316, 320. The strongly stated objections of the minority in *Long* v. *George* (pages 323–331) are not applicable to the case now before us. There the issue was whether the discharge of an attachment on "summary hearing" imported a finding that the allegation of ownership of the property was true. The minority said at page 326, "[The hearing] must be sum-

---

[1] "No policy . . . shall be issued or delivered in the commonwealth . . . if the commissioner notifies the company in writing . . . that in his opinion the form of the policy or contract does not comply with the laws of the commonwealth, specifying his reasons therefor, provided that such action of the commissioner shall be subject to review by the supreme judicial court."

mary. It must therefore concern itself only with those things which are essential to the objective of the statute: that is, with the propriety of the amount of the attachment and with the reasonableness of the attachment." Here when the hearing concerns itself only with such essentials it is a hearing of the matter directly at issue. Here also there is express provision for review as there was not in *Long* v. *George* and here there would be no right in any event to a jury trial.

The cases relied on by the petitioner are cases where there was provision for a prior hearing in a lower court or by the administrative agency. *Sullivan* v. *Municipal Court of the Roxbury District,* 322 Mass. 566, 573. *Swan* v. *Justices of the Superior Court,* 222 Mass. 542, 547–548. *Mayor of Medford* v. *Judge of First District Court of Eastern Middlesex,* 249 Mass. 465. *Selectmen of Wakefield* v. *Judge of First District Court of Eastern Middlesex,* 262 Mass. 477. *Ott* v. *Board of Registration in Medicine,* 276 Mass. 566, 569–570 (where there is a summary of statutes and cases). *Mayor of Everett* v. *Superior Court,* 324 Mass. 144, 146, 150, and cases cited. See *American Employers' Ins. Co.* v. *Commissioner of Insurance,* 298 Mass. 161, 169; *Brest* v. *Commissioner of Insurance,* 270 Mass. 7, 12–13.

The petitioner therefore as to the charges not governed by c. 175A, § 19, at least prior to July 1, 1955, had a right to a trial in this court of "whether the ground for revocation or suspension specified in the notice of the commissioner exists." It was under no misapprehension as to this for its counsel said at the preliminary hearing, "In other words . . . if there be a suspension or revocation, this matter can be taken before the Supreme Judicial Court, in accordance with a provision in the statutes, and a single justice would either hear testimony de novo or would read the record and make a determination, whether the insurance commissioner was right or wrong . . . ."

The case is not altered by the fact that the commissioner chose to hold a preliminary hearing on all grounds for revocation. This fair procedure, extrastatutory at least

prior to July 1, 1955, could not operate to limit the only expressly prescribed hearing.

The finding of the single justice was correct that "the ground for the revocation of the license of the company as specified by the commissioner exists."

Chapter 175, § 5, provides in part that "If the commissioner is satisfied . . . that any foreign company . . . is in an unsound financial condition, or that its business policies or methods are unsound or improper . . . he shall revoke the license issued to said company . . . or, if he is satisfied . . . that any foreign company has violated any provision of law . . . he may revoke such licenses."

The evidence showed that Summit required its agent Costello and succeeding agent Peters to indemnify the company against loss on contracts written by the agent, and that it procured one Corey, friend of an officer of Summit, to underwrite the agents' indemnity obligations with a substantial cash deposit. Corey, not licensed as agent of Summit, participated in the business of obtaining Summit's bail bond customers even though the actual signing of the bonds was by the appointed agent, and kept at least a part of the records which were kept. Corey so acted because of the substantial financial stake in the business which the indemnification by him created. The working arrangement was such in some respects at least as might have been expected if Corey had been the agent and Costello or Peters subagents under him. It was open to the commissioner to find as he did (fourth ground) that the indemnity agreements were unsound and improper business practices (G. L. [Ter. Ed.] c. 175, § 1, as appearing in St. 1947, c. 488, § 10 [definition of "Company"], and § 2). "Practice" as used by the commissioner we hold to be the equivalent of "methods" or "policies" as used in the statute. Upon making such finding the commissioner was required to revoke Summit's license.

The record keeping arrangements also justified the finding (third ground) that Summit had failed to adopt a system of keeping its accounts and records concerning its

business transactions within the Commonwealth. Failure in this respect was further support for the specification that the company's business policies and methods were unsound and improper. Keeping of records by Corey was not keeping of records by the company or its agent. Omission of the notice to characterize the failure to adopt a system of bookkeeping as evidence of unsound business policy or method was not significant. The keeping of records by Corey in the circumstances was obviously a "method" of doing business under a "policy" which was likely to result in nonregulated persons having effective participation in Summit's business. Summit had notice that it was deemed ground for revocation.

The other grounds for revocation specified violations of law for which the commissioner in his discretion might revoke the license. Since we find that the commissioner made findings which were open to him to make which required the revocation of the license, we do not need to examine with the same care the evidence in support of the other grounds to ascertain whether they are all made out to the full extent. We hold that the wording of G. L. (Ter. Ed.) c. 175, § 5, at least as applied to the case before us does not require that the court find that ". . . [all] the ground[s] . . . specified in the notice of the commissioner . . ." exist. We have nevertheless reviewed the evidence relating to the grounds specified for discretionary removal and find that substantial grounds existed, and were specified, for revocation of the license in the discretion of the commissioner in addition to those which required revocation. In the circumstances we do not come to the question of what would be the effect of the failure of some grounds if all grounds specified were discretionary.

*Final decree dismissing*
*the petition affirmed.*