Agnes, A.J.
The defendant John Leeman, Jr. has filed a motion that seeks an exercise of the court’s discretion to dissolve a pretrial attachment on a certain parcel of land in the Town of Andover on grounds that it is “unreasonable” within the meaning of G.L.c. 223, §114 because there is a pending sale of the property to a third party which if allowed to proceed will, under the circumstances, generate more net cash for the benefit of the plaintiff than will result if the sale is blocked.
BACKGROUND
The motion before the court arises out of civil action commenced by the plaintiffs in which they allege that the defendant John Leeman, with knowledge of his wife, defendant Elizabeth Leeman, engaged in a series of fraudulent transactions while he was the accountant for two construction companies owned by the plaintiff between April 1990 and April 2001. The plaintiffs allege that the fraudulent scheme netted the defendants between 2.5 and 3.6 million dollars.
The plaintiff obtained ex parte orders attaching various properties in which the defendant John Lee-man has an interest along with an order authorizing the filing of a memorandum of lis pendens. The real estate attachment is in the amount of 2.5 million dollars. The defendant John Leeman did not move to dissolve the attachment after he received notice.
One of the properties that is subject to the attachment and the lis pendens is a single, undivided lot in the Town of Andover that is known as 383 Johnson Street (“locus”). The parties agree that the locus consists of three buildable lots and another lot that contains a home. It was conveyed to the defendant John Leeman and his wife, defendant Elizabeth Lee-man, by Maiy S. Hoag on June 26,2000. The purchase price was $600,000. See exhibit A to the Reply Memorandum of Defendant Elizabeth M. Leeman. There is also evidence in the record before me that Elizabeth Leeman conveyed all of her right, title and interest in the locus to her husband, John Leeman, on February 22, 2002. See Exhibit A to the Defendant’s Emergency Motion to Dissolve Attachment. The property is subject to a first mortgage held by Banknorth, N.A. in the *720 amount of approximately $544,785.00 (as of January 17,2003). See Exhibit B to the Defendant’s Emergency Motion to Dissolve Attachment. The bank has advised defendant John Leeman that he is in default, has demanded payment in full, and has indicated it is moving forward with foreclosure proceedings. See Exhibit B to the Defendant’s Emergency Motion to Dissolve Attachment.
During 2002, in advance of any communication with counsel for the plaintiffs, the defendant John Leeman developed a plan to sell the locus. His expectation was that he would find a suitable buyer, arrive at a suitable price, and then persuade the plaintiffs to agree to release the locus from the attachment and the lis pendens. A series of communications took place between counsel for the plaintiffs and counsel for the defendants about a plan by the defendant John Leeman to sell the locus to Mr. William Barrett, President of Colonial Village Development Corporation d/b/a William Barrett Homes. The defendant John Leeman and William Barrett entered into a purchase and sales agreement for the locus on February 28, 2002. See Exhibit A to the Defendant’s Emergency Motion to Dissolve Attachment. This agreement calls for a purchase price of 1.075 million dollars on the following terms: a deposit of $50,000 that has been paid and is held in escrow by counsel for the defendants, $700,000 payable in cash at the time of the closing, and $325,000 to be paid by a promissory note to be executed at the time of the closing that will be secured by mortgages of $108,333.00 on each of the three lots payable in three successive payments at 30, 60 and 90 days following the closing and agreed upon interest of $10,000 (subject to a per diem reduction for each day prior to August 15, 2002 after it is paid). See Exhibit A to the Defendant’s Emergency Motion to Dissolve Attachment. This P&S agreement is also subject to the attachments and lis pendens obtained by the plaintiff.
Although the parties dispute the fair market value of the property, the Defendant Leeman asks the court to accept the plaintiffs view for purposes of this motion. See Defendant Leeman’s Emergency Motion at 2. The plaintiffs have offered appraisals that places the market value at 1.3 million dollars, 1.205 million dollars, and 1.1 to 1.2 million dollars respectively. Affidavit of Plaintiff Matses, attachments B, C, D, E and F. The plaintiffs current judgment is that the locus is worth 1.3 million dollars. Affidavit of Matses, para. 5.
There is a factual dispute between the parties about the terms of the sale of the locus by defendant Leeman to Mr. Barrett. The defendants maintain that they outlined the terms to the plaintiffs and there was an understanding that the terms were acceptable to the plaintiffs. However, based on the affidavit by plaintiff Charles T. Matses and his attorney Joseph D. Regan, the plaintiffs carefully explained to the defendants during the past several months that the only circumstance in which the plaintiff would assent to a sale of the property by the defendant John Leeman is if, as a result, plaintiff Matses receives $600,000 (to be held in escrow by his counsel) consisting of a deposit of $450,000 cash at the time of the closing and $150,000 within four months based on notes from the buyer to plaintiff Matses secured by mortgages given by the buyer to plaintiff Matses. Regan Affidavit, para. 12-14 and Matses affidavit para. 9. This is not the deal proposed by the defendant, and this is not an arrangement to which Mr. Barrett, the prospective buyer, has agreed. Regan Affidavit, para. 14; Affidavit of William Barrett attached as exhibit C to Defendant Leeman’s emergency motion.
The principal contention by the defendant Leeman is that if the property is not sold there will be a foreclosure and the result is likely to be that there will be less cash to satisfy any obligation the defendant Leeman may have to the plaintiffs. Defendant John Leeman also maintains that Mr. Barrett may sue him and further diminish the estate available to the plaintiff. Also, the defendant Leeman suggests that the proposed sale price of 1.075 million will produce net proceeds for the plaintiffs that come very close to what the plaintiffs’ threshold is because the sale to Mr. Barrett does not involve a broker or a broker’s commission, the home on one of the lots needs to be razed thus further diminishing the value of the properly, and the fact that Mr. Barrett has obtained the local approvals required for a subdivision which makes him a more attractive buyer than others who do not have such approvals. Again, however, these are facts in dispute.
DISCUSSION
“If an excessive or unreasonable attachment by trustee process or otherwise, is made, the defendant or person whose property has been attached may submit a written motion, in any county, to a justice of the court to which such process is returnable, for a reduction of the amount of the attachment or for its discharge.” G.L.c. 223, §114. The statute contemplates a summary hearing much like the hearing conducted when the attachment is initially requested. See Long v. George, 290 Mass. 316, 320 (1935). This statute is “remedial. . . [and] designed to afford relief against conduct in its results resembling abuse of the process of attachment.” Shea v. Peters, 230 Mass. 197, 199 (1918). In Shea, the court acted under §114 to grant relief to a person not a party to the original action whose property had been attached as the property of the defendant.[1] Accord, Northeastern Malden Barrel Co., Inc. v. Binder, 341 Mass. 710 (1961) (trustee process). See also Marcus v. Pearce Woolen Mills, Inc., 353 Mass. 483, 486 (1968) (“ This remedial provision has been construed broadly to provide relief from abusive attachments”). Putting aside the parties’ disagreement about the market value of the properly and the actual amount of net proceeds that would be produced by the sale proposed by the defendant John Leeman, there is no authoriiy for the proposition that *721 an attachment is “unreasonable” within the meaning of §114 because the plaintiff in the original action, in the opinion of the defendant whose property has been attached, has acted unreasonably in refusing to agree to release property from the terms of the attachment to permit it to be sold.
The defendant John Leeman has devised a complex arrangement with Mr. Barrett in which some funds will be paid into escrow for the plaintiffs benefit at the time of the sale and additional funds will be paid several months later. Under this plan, there is uncertainty about payment of the amounts due under the notes, a lack of security on the part of plaintiff Matses if Mr. Barrett refuses to pay the notes, and no security for the payment of the $10,000 in interest. Furthermore, Defendant Leeman’s argument is premised on assumptions about what Banknorth, N.A. will do as a result of his default, about the result of a foreclosure sale, and the impact of such a sale on other property interests of defendant Elizabeth Leeman. It would be an exercise in speculation for this court to base a decision on these assumptions.
Although the parameters of “unreasonable” conduct under §114 may extend beyond the facts in the Shea case, a judgment that a party has acted unreasonably cannot be made in circumstances such as these in which there is a dispute about the material facts. Moreover, in the present case, even if it was assumed that the sale proposed by the defendant John Leeman to Mr. Barrett would be for a price that reflected the true market value of the property, the terms of the sale expose the plaintiff Matses to risks that are different and perhaps greater than the risks he is exposed to at the present time. To release the locus from the terms of the attachment in such circumstances would be to act in excess of the authority conferred on the court under G.L.c. 223, §114.
In many, if not the vast majority of cases, a pretrial attachment of real estate results in a hardship to the party whose property is attached. In light of the purpose of an attachment which is to provide the plaintiff with “a specific charge upon the property for the security for the debt sued for,” see Davenport v. Tilton, 51 Mass. (10 Metc.) 320, 327 (1845), a defendant does not qualify for relief under G.L.c. 223, §114 simply by establishing that the attachment is harmful to his interests when the relief would also disadvantage the plaintiff.
ORDER
The parties remain free to consider and agree to other terms and submit a joint or assented to motion to dissolve the attachment or to release the locus from it. However, until such time, it is not for this court to say whether the plaintiff is acting in his own best interest by opposing the defendant’s motion. The defendant has a right to be secure, and is not required to put his security at risk. For the above reasons, the motion is DENIED.

The defendants also cite Richardson v. Greenhood, 225 Mass. 608, 610 (1917). There, the court makes reference to the exercise of “judicial discretion” in deciding whether to dissolve an attachment, but simply assumes it was done “wisely.” The case omits any reference to the facts.