IRA C. FOSTER, individually and as administrator,[1]
vs. PHILIP A. EVANS & others.[2]

Essex. September 14, 1981. — December 11, 1981.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Jurisdiction*, Probate Court, Equity, Fraudulent conveyance.  *Probate
Court*, Jurisdiction.  *Fraudulent Conveyance.  Res Judicata.  Limita-
tions, Statute of.  Election of Remedies.*

A Probate Court did not, by virtue of G. L. c. 214, § 3 (8), have jurisdic-
tion to entertain an action seeking to reach property fraudulently con-
veyed by a judgment debtor and to apply that property toward
satisfaction of a judgment of the Superior Court.  [689-690]
An action seeking to reach property fraudulently conveyed by a judgment
debtor and to apply that property toward satisfaction of a judgment of
the Superior Court is cognizable under the general principles of equity
jurisprudence and thus was within the jurisdiction conferred on the
Probate Courts by G. L. c. 215, § 6.  [690-694]
Where a judge in the Superior Court, without making specific findings,
allowed a motion to discharge a plaintiff's attachment of a parcel of
real estate, allowance of the motion did not, in the circumstances,
preclude the plaintiff as judgment creditor from later claiming, in a
separate proceeding in a Probate Court, that a conveyance of the
parcel by one of the defendants in the Superior Court action was
without consideration and in fraud of creditors.  [694-696]
A claim asserted in a proceeding in a Probate Court to set aside as fradu-
lent a conveyance of a parcel of real estate and apply the parcel to the
satisfaction of a judgment of the Superior Court was created by the en-
try of the Superior Court judgment, and thus was subject to the
twenty-year period of limitations applicable to judgments.  [696-697]
A judgment creditor who has attempted unsuccessfully to attach and
levy execution upon a parcel of real property was not precluded from
thereafter maintaining a separate action under equitable principles to
have a conveyance of the property set aside as fradulent.  [697-698]
Evidence in an action seeking to set aside as fradulent a conveyance of real
estate warranted a probate judge's findings that the conveyance was

---

[1] Estate of Elizabeth A. Foster.

[2] The other defendants are Philip W. Evans and Mary P. Evans.

fraudulent as to a judgment creditor and was made with actual intent to defraud.  [698]

PETITION IN EQUITY filed in the Probate Court for the county of Essex on May 23, 1974.

The case was heard by *Pettoruto,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Sumner H. Smith* for the defendants.

*William H. Sheehan, III,* for the plaintiff.

LYNCH, J.  This case is before this court on the plaintiff's application for further appellate review following a decision of the Appeals Court that the Probate Court lacked jurisdiction under G. L. c. 215, § 6, to entertain a creditor's suit to reach property fraudulently conveyed by a judgment debtor and to apply that property toward satisfaction of a Superior Court judgment.  *Foster* v. *Evans,* 10 Mass. App. Ct. 753 (1980).  We affirm the judgment of the Probate Court.

On June 12, 1972, the plaintiff recovered a judgment in the Superior Court in the sum of $17,728.63 on a promissory note made by the defendants, Philip A. Evans and his son Philip W. Evans, in connection with the purchase of a business.  On May 23, 1974, the plaintiff brought this action in the Probate Court for Essex County, seeking to reach and apply the interest of Philip W. Evans in certain residential real estate in Danvers toward satisfaction of the plaintiff's Superior Court judgment and alleging that Philip W. Evans fraudulently conveyed his interest in the property to his wife, Mary P. Evans.  The Probate Court judge found for the plaintiff, ordered a reconveyance of the property from Mary P. Evans as sole owner to Philip W. and Mary P. Evans, as tenants by the entirety, and ordered a sale of Philip W. Evans's interest in the property, with proceeds of the sale to be applied toward satisfaction of the plaintiff's judgment.  The defendants appealed.

The Probate Court judge relied on G. L. c. 214, § 3 (8), and on the first paragraph of G. L. c. 215, § 6, as granting jurisdiction.  The Appeals Court concluded that an action

attacking a fraudulent conveyance was unknown to traditional equity jurisdiction and thus the plaintiff's reliance on G. L. c. 215, § 6, was misplaced. *Foster* v. *Evans, supra* at 754-755. We conclude that actions of this nature may be classified as statutory or nonstatutory, that the Probate Court acquired jurisdiction of nonstatutory creditors' actions under G. L. c. 215, § 6, and that the essential elements of a nonstatutory action were before the Probate Court.[3]

1. *Statutory or special jurisdiction.* Since 1963,[4] the Probate Court has had original and concurrent jurisdiction with the Supreme Judicial and Superior Court over "all cases and matters of equity cognizable under the general principles of equity jurisprudence," with certain exceptions not here material. G. L. c. 215, § 6, as amended through St. 1975, c. 400, § 55. The Supreme Judicial and Superior Courts have, in addition to the general equity jurisdiction conferred upon them by G. L. c. 214, § 1, special jurisdiction over the types of actions enumerated in G. L. c. 214, § 3. Section 3 "authorizes the courts to do certain things which they could not do under their general [equity] jurisdiction, and impliedly authorizes them to take any measures analogous to ordinary proceedings of courts of equity which may be necessary or proper to accomplish the work which they are set to do." *Wilson* v. *Martin-Wilson Automatic Fire Alarm Co.*, 151 Mass. 515, 519 (1890).

Clause 8 of G. L. c. 214, § 3, as appearing in St. 1973, c. 1114, § 62, grants the Supreme Judicial and Superior Courts jurisdiction over "[a]ctions to reach and apply in payment of a debt any property . . . of a debtor, liable to be attached or taken on execution . . . and fraudulently conveyed by him with intent to defeat, delay or defraud his creditors . . . ." The Probate Court judge relied in part on

---

[3] The jurisdiction issue could have been resolved more simply if counsel, or the Probate Court judge on his own motion, had moved to have the Chief Administrative Justice of the Trial Court assign the judge to the Superior Court for the purpose of hearing this case. See G. L. c. 211B, §§ 1, 9.

[4] St. 1963, c. 820, § 1.

cl. 8 in granting relief to the plaintiff here, and the Appeals Court correctly held that reliance to be misplaced.

The Legislature, in enacting the predecessor of G. L. c. 214, § 3, made available to creditors a means of obtaining relief that was not within traditional equity jurisdiction. *Stockbridge* v. *Mixer*, 215 Mass. 415, 418 (1913). *Pettibone* v. *Toledo, Cincinnati & St. Louis R.R.*, 148 Mass. 411, 417-418 (1889). The Legislature clearly limited jurisdiction over this *statutory* action to reach and apply to the Supreme Judicial and Superior Courts, and we so held in *Moseley* v. *Moseley*, 240 Mass. 1 (1921). The subsequent enactment of St. 1963, c. 820, § 1, which gave the Probate Court jurisdiction over "all cases and matters of equity . . . jurisprudence," did not grant the Probate Court jurisdiction to hear actions brought under G. L. c. 214, § 3, since such actions were not cognizable under traditional principles of equity jurisprudence.

2. *General equity jurisdiction.* The Probate Court judge also found jurisdiction under G. L. c. 215, § 6, the statute granting general equity jurisdiction to the Probate Court. The Appeals Court held that it was error to find jurisdiction under G. L. c. 215, § 6, because the statutory action to reach and apply, created by G. L. c. 214, § 3 (8), is not "one known to traditional equity jurisdiction." *Foster* v. *Evans*, 10 Mass. App. Ct. at 755. The Appeals Court cited *Blumenthal* v. *Blumenthal*, 303 Mass. 275, 278 (1939), and referred to a number of our earlier decisions: *Geen* v. *Old Colony Trust Co.*, 294 Mass. 601, 602-603 (1936); *Stockbridge* v. *Mixer, supra* at 415-418; *Pettibone* v. *Toledo, Cincinnati & St. Louis R.R.; supra* at 416, 418. *Powers* v. *Raymond*, 137 Mass. 483, 484 (1884).

The difficulty with this resolution of the jurisdiction issue is that it relies heavily on the language of *Blumenthal* v. *Blumenthal, supra,*[5] while failing to take cognizance of a

---

[5] "Suits in equity to set aside a fraudulent conveyance and to reach and apply certain kinds of property to the satisfaction of the plaintiff's claim are not cognizable as subjects of general equitable jurisdiction but are the creations of statutes conferring special equitable jurisdiction upon the courts." *Blumenthal* v. *Blumenthal*, 303 Mass. 275, 278 (1939).

long established but seemingly divergent body of law in this Commonwealth to the effect that nonstatutory creditors' bills could be brought in courts of equity by creditors "who have in vain attempted at law to obtain satisfaction of [their] judgments, and who sue in equity for the purpose of reaching property which could not be taken on execution at law." *Pettibone* v. *Toledo, Cincinnati & St. Louis R.R.,* *supra* at 417. This use of nonstatutory creditors' bills as an aid to litigants seeking to satisfy their judgments has been recognized by a long line of cases and by leading writers on the subject of equity jurisprudence in this Commonwealth. *Wax* v. *Monks,* 327 Mass. 1, 3 (1951). *Beacon Oil Co.* v. *Maniatis,* 284 Mass. 574 (1933). *Pickard* v. *Clancy,* 225 Mass. 89 (1916). *Geer* v. *Horton,* 159 Mass. 259, 261 (1893). *Powers* v. *Raymond, supra. Carver* v. *Peck,* 131 Mass. 291, 293 (1881). L.A. Reed, Equity Pleading and Practice § 292 (1952). J.R. Nolan, Equitable Remedies § 388 (1975). See generally 21 Am.Jur. 2d, Creditors' Bills, § 1 et seq. (1981).

Thus while this court has said that suits in equity to set aside a fraudulent conveyance are not cognizable under general equity jurisdiction, our decisions have long recognized that there was available in equity a remedy called a "creditor's bill," a remedy similar, but not identical, to what is now commonly known as a bill to reach and apply.

This court has also pointed out that the creation of a statutory action to reach and apply did not abolish the older equitable action. See *Wax* v. *Monks, supra* ("The bill in the present case was not a bill to reach and apply under [G. L. c. 214, § 3 (8)], but was a nonstatutory creditors' bill"); *First Nat'l Bank* v. *Nichols,* 294 Mass. 173, 182 (1936); *Rioux* v. *Cronin,* 222 Mass. 131, 137 (1915); *Parkhurst* v. *Almy,* 222 Mass. 27, 33 (1915) ("It is not sought in the present bill to establish a claim against the . . . defendants [since judgments against them have become final] . . . . What is sought is to have applied to the satisfaction of these [judgments] property which cannot be taken on execution at law. . . . [A] creditor who has reduced his claim to a

judgment . . . can . . . maintain a bill in equity to reach and apply in satisfaction of it property which cannot be taken on execution at common law").

What might appear to be an inconsistency between *Blumenthal* v. *Blumenthal, supra,* and those decisions recognizing creditors' bills disappears when the opinions are carefully analyzed in the context of their historical genesis. In 1851 the Legislature supplemented the common law creditor's bill in equity with a new statutory remedy for creditors.[6] "The manifest purpose of the Legislature . . . was to . . . provide in equity in aid of the law a remedy analogous to that of creditors' suits under general equity jurisdiction." *Orange Hardware Co.* v. *Ryan,* 272 Mass. 413, 416 (1930). This new statutory action to reach and apply, unlike the creditor's bill, did not require the creditor to reduce his claim to judgment or to exhaust his legal remedies. *Pettibone* v. *Toledo, Cincinnati & St. Louis R.R., supra* at 417-418. The statutory creditor's action, now authorized by G. L. c. 214, § 3 (8), "combines in a single proceeding two different matters or steps in procedure, one at law and the other in equity. The first is the establishment of an indebtedness on the part of the . . . defendant to the plaintiff. The second is the process for collecting the debt, when established, out of property rights which cannot be reached on an execution. In essence the first is an action at common law and the second a well recognized head of relief in chancery." *Stockbridge* v. *Mixer, supra* at 418. Thus, since 1851, the Legislature has provided a more efficient remedy for creditors than the equitable procedure known at common law.

In the cases relied upon by the Appeals Court, this court denied requests for relief because the plaintiffs had failed to prove facts essential to the establishment of equitable jurisdiction. *Blumenthal* v. *Blumenthal, supra,* the principal case, concerned a wife who had recovered a judgment against her husband in New York on a separation agreement.

[6] St. 1851, c. 206, § 1.

She brought suit against her sister-in-law, a Massachusetts resident, in Massachusetts, seeking to reach and apply certain property which she alleged her husband had fraudulently transferred to his sister. In failing to find any basis, either legal or equitable, to sustain the plaintiff's claim, the court used language that was unfortunately broader than necessary. The essence of the holding was that the plaintiff had no claim for money damages either in law or equity against the husband or his transferee. The outcome of the case can easily be explained by the reluctance of the court, at that time, to give cognizance to a suit between a husband and a wife residing outside of the Commonwealth where such a suit would not have been recognized had they resided here. In other cases cited by the Appeals Court, the plaintiffs had not obtained judgments, nor did they allege fraudulent transfers. See *Geen* v. *Old Colony Trust Co., supra*; *Stockbridge* v. *Mixer, supra*; *Pettibone* v. *Toledo, Cincinnati & St. Louis R.R., supra*; *Powers* v. *Raymond, supra.*

The plaintiff here obtained a judgment and execution. The record does not reveal whether he attempted to levy upon that execution; in any event, the judgment remains unsatisfied. Equity courts traditionally have required plaintiffs to establish, as a prerequisite to filing creditors' bills, that they had obtained judgments at law but that those judgments had been returned unsatisfied. *Wax* v. *Monks, supra* at 3. *First Nat'l Bank* v. *Nichols, supra* at 182. *Pettibone* v. *Toledo, Cincinnati & St. Louis R.R., supra* at 417. *Powers* v. *Raymond, supra* at 484.

The rule requiring both judgment and unsatisfied execution, however, "is not an absolute one, and does not apply where a judgment and execution would be of no practical utility." *Maguire* v. *Spaulding*, 194 Mass. 601, 604 (1907). "[J]udgment and fruitless execution are only *evidence* that [the plaintiff's] legal remedies have been exhausted, or that he is without remedy at law. They are not the only possible means of proof. The necessity of resort to a court of equity may be made otherwise to appear." (Emphasis supplied.) *Case* v. *Beauregard*, 101 U.S. 688, 690 (1879) (court had

jurisdiction although complaint failed to allege judgment and return of execution unsatisfied).

In cases involving fraudulent conveyances, attempts to levy upon an execution are particularly likely to prove futile.[7] *Id.* We hold, therefore, that a plaintiff who has obtained a judgment at law against a debtor, and who alleges that the judgment cannot be satisfied because the debtor has fraudulently transferred his assets to a third party, has stated a case which is cognizable under the general principles of equity jurisprudence. Since the plaintiff here has no adequate remedy at law, he is entitled to the equitable relief he seeks.

3. *Issue preclusion.*[8] The defendants, relying on *Long* v. *George*, 290 Mass. 316 (1935), argue that a Superior Court judge decided the fraudulent conveyance issue in their favor earlier when he granted their petition to discharge the plaintiff's attachment of the Danvers real estate, and that this decision bars the plaintiff from relitigating the issue in the Probate Court. The plaintiff, on the other hand, claims that the fraudulent conveyance issue was neither litigated nor decided. Section 114 of G. L. c. 223, as amended through St. 1975, c. 377, § 38, under which the defendants moved for relief from the plaintiff's attachment, authorizes a judge to grant relief from an "excessive or unreasonable attachment" on a finding that "the action is one to recover for an amount which is liquidated . . . and the attachment

---

[7] "Though a conveyance in fraud of creditors was not valid at law, the only legal remedy available was to levy upon and sell the interest of the debtor in the property and then sue to recover possession of the property from the fraudulent grantee. Not only did this require a circuity of action, but it necessitated the making of the sale before the invalidity of the conveyance had been judicially determined, so that the sale was not apt to produce any substantial price. Such a remedy was not adequate, and equity gave relief by a bill to set aside the conveyance." H.L. McClintock, Equity § 210, at 555 (2d ed. 1948).

[8] See *Almeida* v. *Travelers' Ins. Co.*, 383 Mass. 226, 226 n.1; "Although the parties use the familiar terminology 'res judicata,' this expression has been replaced, in most cases, by the more precise phrase 'issue preclusion.'"

is for a larger sum than the amount of the claim [plus costs and interest]." A Superior Court judge granted the defendants' petition without making specific findings.

The defendants alleged in their earlier petition that Mary P. Evans had acquired the Danvers property from her husband in good faith and for valuable consideration, and that she "at no time had any business dealings with [the plaintiff]." The defendants executed the note on which the plaintiff recovered his original judgment when they purchased that business from the plaintiff. The judge's order discharging the attachment, the defendants argue, must therefore have been based upon his conclusion that Mary P. Evans was the equitable, as well as the legal, owner of the property. The defendants, however, have the burden of proving that this was the basis of the judge's order. See Restatement (Second) of Judgments § 68, Comment f (Tent. Draft No. 1, 1973). On this record they have failed to sustain this burden.

If such an order can be raised as a bar to a subsequent claim that the conveyance was without consideration and in fraud of creditors, then a motion judge's decision rendered in summary fashion can deprive a litigant of such procedural safeguards as an evidentiary hearing, discovery, and cross-examination.[9] We do not believe that the Legislature intended this result to follow from a proceeding intended as an aid to litigants who may have been victimized by an unfair real estate attachment. Issues raised in petitions to dissolve attachments customarily are decided on the basis of affidavits and statements of counsel. The decision rendered is discretionary, interlocutory and unappealable. *Richardson* v. *Greenhood*, 225 Mass. 608, 610 (1917). This procedure clearly is not designed to produce final determinations on significant matters of fact affecting the litigants. It is consistent, however, with enabling litigants to obtain a pre-

---

[9] In appropriate circumstances a decision on a petition to discharge an attachment would have the potential of depriving a party of his right to jury trial if this view were adopted.

liminary determination to avoid obvious and substantial in-justice where that determination is subject to procedural safeguards to remedy, at a later date, any error that may have resulted from the necessarily summary nature of the original proceedings.

Issue preclusion applies only to determinations made dur-ing proceedings in which the parties had an adequate op-portunity to litigate the issues decided.[10]  See Restatement (Second) of Judgments § 68 & Comments d, e (Tent. Draft No. 1, 1973).  The hearing that resulted in the order relied upon by the defendants afforded no such opportunity, and to the extent that *Long* v. *George, supra*, requires any other result, it is overruled.  Further, the order dissolving the plaintiff's attachment was not essential to the Superior Court judgment for the plaintiff.  See Restatement (Second) of Judgments § 68, at Comment h (Tent. Draft No. 1, 1973). We conclude, therefore, that the doctrine of issue preclusion did not bar the plaintiff from raising, in the Pro-bate Court, the issue of the defendant Philip W. Evans's fraudulent conveyance.

4. *Statute of limitations.*  The defendants rely on *Mose-ley* v. *Briggs Realty Co.*, 320 Mass. 278 (1946), for the prop-ositions that a six-year statute of limitations applies to actions to rescind fraudulent conveyances, and that this statute commences to run on the date of the conveyance.  If so, the plaintiff's suit to rescind the conveyance to Mary P. Evans and to recover on his judgment is time-barred.

A close reading of that case, however, reveals that there the plaintiff's claim was based upon a statutory tort allegedly committed by the defendants.  As a result, this court deter-mined that the period of limitations applicable to actions sounding in tort, then six years, should apply.  *Id.* at 283, 285.

Here, the claim asserted by the plaintiff in the Probate Court suit was created by the entry of a judgment in his favor against the defendant Philip W. Evans.  The plaintiff

---

[10] "The concept of res judicata/preclusion is based on the idea that the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit." A. Vestal, Res Judicata/Preclusion V-401 (1969).

seeks in this suit to reach Philip W. Evans's interest in property standing in the name of another who acquired legal title only, without consideration and for the express purpose of defeating the rights of the plaintiff and other creditors. As this court did in *Moseley* v. *Briggs Realty Co., supra,* [11] we apply here the period of limitation applicable to the underlying claim, in this case the twenty-year period applicable to actions on judgments.[12]  G. L. c. 260, § 1.

5. *Election of remedies.*  The defendants argue that the plaintiff, having elected to attach and levy execution upon the property standing in the name of Mary P. Evans, pursuant to G. L. c. 109A, § 9 (1) (*b*), cannot thereafter proceed in equity under § 9 (1) (*a*) to have the deed to Mary P. Evans set aside and to recover directly (rather than by means of judicial sale and subsequent legal action to try title) Philip W. Evans's interest in the property.  The language of the statute, quoted below,[13] provides no support for the defendants' assertion.  Further, this court has held that legal relief (through levy of execution and suit to try title) and special equitable relief (through a statutory bill to reach and apply under G. L. c. 214, § 3) are available concurrently. *Sztramski* v. *Spinale,* 332 Mass. 500 (1955).  *Bress* v. *Gersinovitch,* 231 Mass. 563 (1919).  *Stratton* v. *Hernon,* 154 Mass. 310 (1891).  By analogy, the "legal" relief afforded by G. L. c 109A, § 9 (1) (*b*), and the "equitable" relief afforded by

---

[11] See *David* v. *Zilah,* 325 Mass. 252 (1950), where this court applied a similar rule and allowed the plaintiff to recover real estate which had been conveyed from his debtors to the debtors' sons for no consideration. The plaintiff sought recovery on a judgment and on an oral loan.  We allowed him to recover on the judgment but not on the loan, which was time-barred.

[12] We need not, and do not, decide whether the statute is tolled when the fraudulent conveyance is made or upon the entry of judgment, since the plaintiff's suit here would be timely under either rule.

[13] General Laws c. 109A, § 9 (1) provides: "Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may . . . (*a*) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or (*b*) Disregard the conveyance and attach or levy execution upon the property conveyed."

§ 9 (1) (*a*) should also be available concurrently. Accordingly, we hold that the remedies provided by G. L. c. 109A, §§ 9 (1) (*a*) and 9 (1) (*b*) are not exclusive, and that the plaintiff is not barred by his unsuccessful attempt to obtain relief under subsection (1) (*b*) from later seeking relief under subsection (1) (*a*).

6. *Fraudulent conveyance.* The defendants also assert that the Probate Court judge's finding of a fraudulent conveyance is not supported by the evidence and should be reversed. We have before us a full transcript and a report of material facts. Consequently, "it is our duty to examine the evidence . . . and decide [the] issues according to our judgment as to the facts and the law, giving due weight to the findings of the judge which will not be reversed unless plainly wrong." *Bianchi* v. *Retirement Bd. of Somerville,* 359 Mass. 642, 644 (1971). Accord, *Loyal Protective Life Ins. Co.* v. *Massachusetts Indem. & Life Ins. Co.,* 362 Mass. 484, 485 (1972); *Greeley* v. *O'Connor,* 294 Mass. 527, 529 (1936). See Mass. R. A. P. 8, as amended, 378 Mass. 944 (1979); *New England Canteen Serv. Inc.* v. *Ashley,* 372 Mass. 671, 675 (1977) (trial judge is in best position to determine credibility and weight of evidence). The evidence amply warranted the Probate Court judge's findings that the conveyance was fraudulent and made with actual intent to defraud.

> *Judgment of the Probate Court*
> *affirmed.*