JAMES L. STEVENS & another[1] vs. IRA A. NAGEL, special
administrator.[2]

No. 02-P-572.

Middlesex. April 2, 2004. - July 27, 2005.

Present: PERRETTA, LAURENCE, & McHUGH, JJ.

*Trust,* Constructive trust. *Practice, Civil,* Motion to dismiss. *Unjust
Enrichment.*

In a civil action to impose a constructive trust on a portion of a decedent's
    estate, the judge erred in dismissing the complaint for failure to state a
    claim upon which relief could be granted, where the complaint stated at
    least a claim for unjust enrichment and raised a question whether a
    constructive trust should be imposed on money belonging to the plaintiffs
    that the decedent had received from a third party. [138-141]

CIVIL ACTION commenced in the Superior Court Department on
February 26, 2001.

A motion to dismiss was heard by *Julian T. Houston,* J.

*Denis J. Sullivan* for the plaintiffs.

*Howard S. Fisher* for the defendant.

McHUGH, J. Karen Stevens Vallier (Karen) and her brother,
James L. Stevens (James), filed an action in Superior Court
seeking to impose a constructive trust on a portion of the estate
of their uncle, Charles Galatis (Charles). The plaintiffs claim
that Charles's estate included money that his wife, their aunt,
had wrongfully taken from their father's estate. A judge of the
Superior Court dismissed their complaint for failure to state a
claim on which relief could be granted, see Mass.R.Civ.P.

_____

[1] Karen Stevens Vallier.

[2] Of the estate of Charles P. Galatis.

12(b)(6), 365 Mass. 754 (1974), and the plaintiffs appealed. We reverse.[3]

The complaint's allegations, including the inferences favorable to the plaintiffs, see *Eyal* v. *Helen Bdcst. Corp.*, 411 Mass. 426, 429 (1991), citing *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), are as follows. Helen L. Galatis (Helen) was the plaintiffs' aunt and was also the executrix of their father's estate. Helen misappropriated $100,000 in life insurance proceeds from the estate. That money was intended for the plaintiffs.

After the plaintiffs discovered Helen's embezzlement, she "begged them not to take legal action" because of the impact the action would have on Charles and assured them that they would be "made whole" upon her death from certificates of deposit and savings deposits she owned. Two years later, Helen died without leaving a will. After Helen's death, James asked Charles to return the money Helen had taken from his father's estate, but Charles refused. Several years later, however, Charles told Karen that her share of the money Helen had wrongfully taken was in a certificate of deposit, and that she would have the certificate when he died. Charles also told Karen that James would receive his share of the embezzled money from other funds, also when Charles died.

Charles died without making any provision in his will for James or Karen. During at least the latter portion of his life, Charles did not work "and the funds from the Estate of [the plaintiffs' father] provided the monies he used to support himself."

---

[3]The plaintiffs also appeal what they claim was the judge's erroneous denial of their motion to amend their complaint, in order to refine their allegation that Charles held the disputed funds as a constructive trustee. However, the plaintiffs neither filed a written motion to amend, see Mass.R.Civ.P. 7(b)(1), 365 Mass. 748 (1974), nor formally proffered an oral motion during the course of the hearing on the defendant's motion to dismiss. In view of the result we reach on the unamended complaint, however, concerns about possible amendments are irrelevant. For his part, the defendant claimed at oral argument that the action was barred because it was not commenced within the time required by G. L. c. 197, § 9. Although the defendant's answer raised the statute of limitations as an affirmative defense, he did not mention the defense or the statute in his motion to dismiss, at the hearing on that motion, or in the brief he filed in this court. We, therefore, decline to consider the issue. See *Federal Financial Co.* v. *Savage*, 431 Mass. 814, 820 n.6 (2000); *Rafuse* v. *Stryker*, 61 Mass. App. Ct. 595, 601-602 (2004).

The sufficiency of those allegations must be tested by application of several familiar principles. We accept as true all of the allegations of a complaint. See *Eyal* v. *Helen Bdcst. Corp.*, *supra*; *Berish* v. *Bornstein*, 437 Mass. 252, 267 (2002). With the allegations so viewed, "a complaint is sufficient against a motion to dismiss if it appears that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely may not be appropriate." *Nader* v. *Citron*, 372 Mass. at 104.

Based on the factual allegations recited above, the plaintiffs specifically sought to impose a constructive trust on theories of fraud and breach of contract. The fraud theory was based on a claim that Charles's promises of postmortem restitution induced the plaintiffs to refrain from suing him while he lived. A viable claim for fraud would arise if Charles made the promises knowing that he had no intention of carrying them out, and if reliance on the promises caused the plaintiffs to refrain from bringing what would have been a successful action against him while he lived. See, e.g., *Ciarlo* v. *Ciarlo*, 244 Mass. 453, 456 (1923); *Beale* v. *Avery*, 277 Mass. 332, 333 (1931).

It may also be that a valid promissory estoppel claim arises from the allegations that the plaintiffs' reliance on Charles's promises caused them to refrain from successfully suing him while he lived. See generally *Ford* v. *Rogovin*, 289 Mass. 549, 552 (1935), citing *Boston & Albany R.R.* v. *Reardon*, 226 Mass. 286, 291 (1917). Success on such a claim requires "an unambiguous promise and [proof] that the party to whom the promise was made reasonably relied on the representation." *Rhode Island Hosp. Trust Natl. Bank* v. *Varadian*, 419 Mass. 841, 848 (1995).

We need not tarry long to consider the complaint's sufficiency on either or both of those theories, for we think it is clearly sufficient on a third. When read with the required indulgence, the complaint alleges that Charles received wrongfully acquired money. Specifically, the complaint alleges that Helen embezzled money from the estate of the plaintiffs' father, that the embezzled money increased the value of Helen's estate, and that Charles succeeded to that increased value when he obtained Helen's estate proceeds. If the plaintiffs can prove that succes-

sion, and that Charles gave no value for the funds to which he succeeded, then they will have proved that he was unjustly enriched to the extent of those funds, and that therefore they are entitled to a constructive trust to the extent necessary for a transfer of the funds to them.

Decided cases describe the theory of unjust enrichment and its application to facts like those the complaint alleges. In *Jones* v. *Swift*, 300 Mass. 177 (1938), for example, shares of stock had been transferred to the defendant in a complicated transaction, the details of which need not be recounted here. The court held that the transfer was not for value and was wrongful, insofar as the plaintiff was concerned, even though the defendant transferee actually believed that the transfer was appropriate. The court held that the defendant was required to return the stock because

> "[i]t is elementary that, if a trustee, in breach of trust, transfers property to one who takes with notice of the breach of trust *or who gives no value for the transfer*, the transferee does not hold the property free of the trust. And a person who has been unjustly enriched at the expense of another may be required to make restitution to the other. The application of this general rule is found in cases of transfer of trust as well as other property, whatever may be the form that the remedy takes." (Emphasis added.)

*Id.* at 185 (citations omitted).

More recently, in *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501 (1997), one of the defendants had diverted corporate opportunities in breach of a fiduciary obligation to the plaintiffs. The diverted opportunities became the foundation for the business operations carried out by corporations that had had no role in the diversions themselves. Nevertheless, the trial judge ordered transfer of the assets and liabilities of those corporations to the plaintiffs. The Supreme Judicial Court affirmed, saying that the order

> "was an appropriate remedy, because the companies, as the recipients of property transferred by fiduciaries in violation of their duty to their beneficiaries, hold that property on a constructive trust for the beneficiaries . . . .

[A] constructive trust is not imposed where a recipient has given value or had no notice of the violation of duty."

*Id.* at 544. See *Fortin* v. *Roman Catholic Bishop of Worcester*, 416 Mass. 781, 789, cert. denied, 511 U.S. 1142 (1994) ("Under Massachusetts law, a court will declare a party a constructive trustee of property for the benefit of another if he acquired the property through fraud, mistake, breach of duty, or in other circumstances indicating that he would be unjustly enriched"); *Demoulas* v. *Demoulas*, 428 Mass. 555, 582-583 (1998); Restatement of Restitution § 201 (1937) (If "a fiduciary, in violation of his duty to the beneficiary transfers property or causes property to be transferred to a third person, the third person, if he gave no value or if he had notice of the violation of duty, holds the property upon a constructive trust for the beneficiary"). See also *Jensen* v. *Daniels*, 57 Mass. App. Ct. 811, 818 (2003) ("There are, to be sure, circumstances under which the innocent recipient of money, or goods the money bought, may be required to make restitution to the person from whom the money was wrongfully obtained"); Restatement of Restitution § 168(1) (1937) (If "a person holding property in which another has a beneficial interest transfers title to the property [to a third person] in violation of his duty to the other, the transferee holds the property subject to the interest of the other, unless [that party] is a bona fide purchaser").

As suggested earlier, a complaint is sufficient if it "sketch[es] the bare silhouette of a cause of action." *Brum* v. *Dartmouth*, 44 Mass. App. Ct. 318, 322 (1998), *S.C.*, 428 Mass. 684 (1999), quoting from *Coolidge Bank & Trust Co.* v. *First Ipswich Co.*, 9 Mass. App. Ct. 369, 371 (1980). Reduced to essentials, the complaint sketches a claim for restitution to the extent that, without giving any value, Charles received from Helen money that belonged to the plaintiffs.[4] Here, as in *National Shawmut Bank of Boston* v. *Fidelity Mut. Life Ins. Co.*, 318 Mass. 142,

---

[4]Because "money is fungible," *United States* v. *Sperry Corp.*, 493 U.S. 52, 62 n.9 (1989), neither recovery on a theory of unjust enrichment nor imposition of a constructive trust requires the plaintiffs to prove that an identifiable component of Charles's estate originated in an identifiable component of their father's estate. It is instead enough for them to show the extent to which Charles received from Helen's estate greater value than he would have received absent the money Helen took from the estate of the plaintiffs' father.

150 (1945), "[t]he fundamental question . . . is whether [Charles] received money which in equity and good conscience belongs to the plaintiff[s]. If so, [Charles's estate] must restore it. . . . The fact that the legal title to the money passed to [Charles] is not significant. That is true in most instances in which restitution is ordered." See *Simonds* v. *Simonds*, 45 N.Y.2d 233, 242 (1978) ("Unjust enrichment . . . does not require the performance of any wrongful act by the one enriched. Innocent parties may frequently be unjustly enriched. What is required, generally, is that a party hold property 'under such circumstances that in equity and good conscience he ought not retain it' " [citations omitted]).

The complaint stated at least a claim for unjust enrichment and raised a question whether a constructive trust should be imposed on money belonging to the plaintiffs that Charles had received from Helen. The complaint should not have been dismissed before that question was resolved. The judgment is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*