van Gestel, Allan, J.
This matter returns to the Court[2] on several somewhat interconnected motions that relate to what remains of the case. Those motions, in their order of docketing are: Defendant Maralyn P. Mackenzie’s Motion for Summary Judgment, Paper #80; Plaintiffs Cross Motion for Summary Judgment, Paper #81; Defendant Maralyn Mackenzie’s Motion to Dissolve Real Estate Attachment, Paper #86; Plaintiffs Ex Parte Motion in Aid of Execution Pursuant to Rule 69, Paper #88; Emergency Motion for Protective Order [by Maralyn Mackenzie], Paper #90; Motion to Strike Paragraph 5 of Maralyn Mackenzie’s Second Affidavit, Paper #93; and Motion for Leave of Court to Withdraw as Counsel, Paper #94.

BACKGROUND

This is a case in which the plaintiff, Gregory Abbot (“Abbott”), claimed that the defendant Arthur G. Mackenzie, Jr. (“Mackenzie”) made numerous misrepresentations to induce Abbott to enter into a business partnership or venture with one of Mackenzie’s com- *3 parties, the defendant Arthur MacKenzie Productions, Inc. (“AMP”). The partnership or venture hereafter sometimes will be called the AMP/Abbott Partnership. Abbott also claimed that once he agreed to enter into the partnership and contributed substantial sums of money thereto, MacKenzie, both individually and as a principal of the two corporate defendants — AMP and Arrowhead Entertainment, Inc. (“Arrowhead”) — misappropriated corporate funds, breached fiduciary duties owed to Abbott, and otherwise defrauded him.
After full discovery and a jury-waived trial on the merits between Abbott, on the one hand, and MacKenzie, AMP and Arrowhead, on the other, this Court ultimately entered the following judgment, after making findings of fact and rulings of law.
ON COUNTS I, II, VI, VII, X AND XII OF THE COMPLAINT, THE PLAINTIFF, Gregory Abbott, IS ENTITLED TO JUDGMENT AGAINST THE DEFENDANTS Arthur MacKenzie Productions, Inc., Arrowhead Entertainment, Inc., and Arthur MacKenzie, Jr., in the amount of $819,899.63, plus interest in the amount of $401,750.81, plus costs of $16,848.60, plus statutory interest from March 21, 2005.
ALL COUNTS OF DEFENDANTS’ COUNTERCLAIMS ARE DISMISSED WITH PREJUDICE.
THERE IS NO JUST REASON FOR DELAY AND, THEREFORE, THIS JUDGMENT SHALL ENTER PURSUANT TO MASS.R.CIV.P. RULE 54(b).
Over a year earlier, on April 6, 2004, the claims against Maralyn P. MacKenzie (“Maralyn”), MacKenzie’s wife, were severed and stayed. See Paper #31. Those claims are now all the remains to be resolved in this case. They are set forth in Counts XIV and XV. Neither count charges Maralyn with any wrong-doing. Indeed, at oral argument on the current motions, Abbott’s counsel conceded as much.
The two counts against Maralyn each resulted from her being in the wrong place at the wrong time. Count XIV names Maralyn solely as a reach and apply defendant. It charges MacKenzie with “convert[ing] funds belonging to [Abbott] and us[ing] those funds to make improvements to and maintain the property which is [AMP’s and Arrowhead’s] principal place of business, and . . . MacKenzie’s residential home without [Abbott’s] knowledge or consent.” Abbot, thus seeks to reach and apply MacKenzie’s “interest in the real estate [the Property] to the extent of the value of the misappropriated and converted funds.” Title to the Property, however, has been solely in Maralyn’s name since some time in 1973, long before the events of the underlying lawsuit and long before Abbott ever came on the scene. Nothing has been presented to demonstrate that the Properly was fraudulently conveyed to Maralyn.
Count XV again repeats Abbott’s claims against MacKenzie of conversion to improve and maintain the Property and asserts that “while the Property is not deeded in the name of [MacKenzie], a constructive trust exists so as to favor . . . [MacKenzie’s] interest in the Property over the grantee to whom the properly is deeded.” That grantee, of course, is Maralyn.
On April 6, 2004, on an unopposed motion by Abbott, this Court granted areal estate attachment on the Property in the amount of $96,538.19. This amount was said in supporting papers to be made up of $73,136.00 in alleged mortgage payments by MacKenzie and $23,402.19 in alleged improvements to the Property with improperly converted funds of the defendant corporations, AMP and Arrowhead.
The parties are in agreement as to the following undisputed facts.
MacKenzie has lived with his wife, Maralyn, at property located at 22 Arrowhead Road, Weston, Massachusetts, since 1959. Maralyn is 70 years old and has been married to MacKenzie since 1959.
The defendant corporations, AMP and Arrowhead, also were operated out of the Property, which Property has been in the sole name of Maralyn since 1973. At oral argument, the Court was told that the corporations are not functioning at this time.
There was no evidence at the trial against MacKenzie, AMP and Arrowhead, that Maralyn was a party to or participated in the alleged transgressions by her husband or the corporations. Maralyn denies knowing anything significant about her husband’s business dealings and claims, that she was “a traditional housewife.” “She raised the children and kept house while [MacKenzie] worked.”
MacKenzie is a concert pianist and, prior to the trial at least, was an entertainment industry consultant, with credits as a theatrical producer, concert producer, and television producer. He had an extensive network of contacts in the entertainment industry.
Among its findings, this Court ruled that Abbott was not entitled to recover the first $150,000 he gave to MacKenzie in April of 1998 because it was an investment. Further, the Court found that MacKenzie was entitled to a salary from AMP of $80,000 for 1999 and 2000, the first two years of the partnership.
The Court also found and ruled, “There is no conversion here” and “no basis for establishing a constructive trust.”
Also, the Court found and ruled that there was a “confused intermingling by MacKenzie” that “enables a piercing of the corporate veil[s of AMP and Arrowhead] and holding him personally responsible as a partner or venturer with Abbott.”
This is the setting in which the present array of motions were heard and will be considered. Additional facts relating to particular motions may be included in the discussion thereon.

*4
DISCUSSION

The Court will address the motions separately, except for the cross motions on summary judgment which will be treated together.

Cross Motions for Summary Judgment

“Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law.” M.P.M. Builders, LLC v. Dwyer, 442 Mass. 87, 89 (2004); Kesler v. Pritchard, 362 Mass. 132, 134 (1972). Mass.R.Civ.P. Rule 56(c).
The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). When, such as here, there are cross-motions, the Court is compelled to look at each motion with the burden being imposed on the party who is the movant.
Two different, but sometimes intertwined, legal or equitable concepts will dictate the result here. First, MacKenzie, not Maralyn, is charged with conversion. She, however, is said to have received some of the ill-gotten gains either in cash or by virtue of payments to aid in the upkeep of the family home to which she alone holds title. Unjust enrichment is what Abbott claims enables him now to reach and apply from Maralyn the benefits she may have received from her husband.
It is the unjust enrichment that also is said to support the constructive trust theoiy.
“[A] constructive trust is not imposed where a recipient has given value or had no notice of the violation of duty.” Id. [424 Mass.) at 544. See Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 789, cert. denied, 511 U.S. 1142 (1994) (“Under Massachusetts law, a court will declare a party a constructive trustee of property for the benefit of another if he acquired the property through fraud, mistake, breach of duty, or in other circumstances indicating that he would be unjustly enriched”); Demoulas v. Demoulas, 428 Mass. 555, 582-83 (1998); Restatement of Restitution § 201 (1937) (If “a fiduciary, in violation of duty to the beneficiary transfers property or causes property to be transferred to a third person, the third person, if he gave no value or if he had notice of the violation of duty, holds the property upon a constructive trust for the beneficiary”). See also Jensen v. Daniels, 57 Mass.App.Ct. 811, 818 (2003) (“There are, to be sure, circumstances under which the innocent recipient of money, or goods the money bought, may be required to make restitution to the person from whom the money was wrongfully obtained”); Restatement of Restitution § 168(1) (1937) (If “a person holding properly in which another has a beneficial interest transfers title to the property [to a third person] in violation of his duty to the other, the transferee holds the property subject to the interest of the other, unless [that party] is a bona fide purchaser”).
Stevens v. Nagel, 64 Mass.App.Ct. 136, 140 (2005).
Here, there is nothing in the summary judgment record, or in the trial record for that matter, that demonstrates, or even permits an inference, that Maralyn acquired anything of Abbott’s “through fraud, mistake, breach of duty, or in other circumstances indicating that [s]he would be unjustly enriched.” It certainly is not readily apparent that when a spouse, who appears well employed, contributes to household expenses in a marital home owned by the other spouse there exists a circumstance indicating that the recipient spouse would be unjustly enriched. Indeed, if that is the law in Massachusetts, how deeply into the marital relationship must a spouse — or a Court— probe to determine the propriety of money coming from the other spouse to pay routine bills?[3]
This Court is of the view that the statements quoted in Stevens from Demoulas, 424 Mass. at 544, and Demoulas, 428 at 582-83, to the effect that the recipient sought to be held as being unjustly enriched must be shown to have some notice of a violation of a duty to a third person by the party bestowing funds on the recipient, more equitably states the law. There is no such showing here.
What happened here is that Abbott gave funds to a corporate entity, to be used in a form of business partnership or joint venture to which Abbott was a partner or venturer, and MacKenzie, an individual who controlled the corporate-entity-partner, misapplied a significant amount of the funds. This is a far ciy from the circumstance described in Stevens v. Nagel.
Abbott cites to Foster v. Evans, 384 Mass. 687, 694 (1981), as giving him authority to reach to Maralyn’s assets. Foster, however, is clearly distinguishable and provides no basis for Abbott’s present proceedings. In Foster, a judgment creditor of Philip W. Evans was permitted to reach real estate said to have been fraudulently conveyed from Philip W. Evans and Mary P. Evans, his wife, to Mary P. Evans solely. What the SJC supported in Foster was an order that the real estate be reconveyed to Philip W. and Maiy P. Evans and then ordered a sale of Philip W. Evan’s interest in the real estate to satisfy a judgment against him. There is no evidence of any fraudulent conveyance of the Weston real estate from MacKenzie and Maralyn to Maralyn solely in 1973. Nor is there any evidence of any fraudulent conveyance of any other property, real or personal, of Arthur MacKenzie to Maralyn.
“What is required, generally, is that a party hold property ‘under such circumstances that in equity and good conscience he ought not retain it.’ ” Stevens, supra, 64 Mass.App.Ct. at 141, quoting from Simonds v. Simonds, 45 N.Y.2d 233, 242 (1978). Again, this Court does not think this concept can be stretched to reach some incalculable enhancement in value to *5 Maralyn’s real estate because her husband payed to have the lawn mowed in summer or the driveway plowed of snow in the winter, or even, more directly, by, from time to time, his making the monthly promissory note payments for which the Property, through the mortgage, is security in the event of a default.
What Abbott really had were derivative claims against MacKenzie on behalf of the two corporate entities, AMP and Arrowhead, which claims were expanded to reach MacKenzie personally by this Court’s permitting the piercing of the corporate veils. To reach still further to property of MacKenzie’s wife, who was in no way involved in the business at hand, nor has been shown to have had any significant knowledge at all of MacKenzie’s misdeeds, goes far beyond any legal or equitable concept known to this Court.
This Court has already found that there was no conversion by MacKenzie, nor any basis for a constructive trust against him.
For there to be conversion against Maralyn there must be a showing that she exercised dominion over the personal properly of Abbott, without right, either by appropriating the property, by depriving Abbott of it, or by destroying it. Spooner v. Holmes, 102 Mass. 503, 506 (1869). Maralyn is neither shown, or even alleged, to have exercised dominion over any personal property of Abbott. At most, Maralyn’s husband used cash from corporations he controlled — otherwise wholly fungible — to make payments which may have, in some way not established, increased the value of the residential real estate owned by her. There is no showing that Maralyn had any knowledge whatsoever that the money her husband spent on her residential property belonged to Abbott. See, e.g., Bleicken v. Stark, 61 Mass.App.Ct. 619, 621-22 (2004).
Further, there is no showing that Abbott, who has the burden, can demonstrate any general or special ownership in the money in issue and a right to its immediate possession. See MacNeil v. Hazelton, 306 Mass. 366, 367 (1940). Indeed, if MacKenzie himself was not a converter of Abbott’s money — which has been ruled to be the case, and not appealed from by Abbott — then MacKenzie’s using that money to enhance Maralyn’s home cannot make her a converter of Abbott’s property.
Similarly, as already discussed above, there is no basis for Abbott to impose a constructive trust on Maralyn’s residential real estate.
Maralyn’s motion for summary judgment shall be allowed and Abbott’s cross motion shall be denied.

Maralyn MacKenzie’s Motion to Dissolve Real Estate Attachment

For the reasons stated above, there being no claims against Maralyn MacKenzie, the sole owner of and party with any interest in the real property located at 22 Arrowhead Road, Weston, Massachusetts, there is no basis for continuing the real estate attachment placed thereon in 2004. Thus, her motion to dissolve that attachment will be allowed.

Motion in Aid of Execution and Motion for Protective Order

Abbott has filed a motion in aid of execution. By this motion he seeks an order from this Court authorizing the Middlesex County Sheriffs Office to enter the home at 22 Arrowhead Road, Weston, Massachusetts, for the purpose of “seizing assets of’ Arthur G. MacKenzie, Arthur MacKenzie Productions, Inc. and Arrowhead Entertainment, Inc. in support of the unsatisfied execution issued against those three parties.
On September 19, 2005, counsel for Abbott wrote counsel for MacKenzie, AMP and Arrowhead, and made a demand for payment of the execution of judgment then about to be issued by the Court. On September 22, 2005, MacKenzie’s counsel replied. He said: “Please be advised that we are unaware of any assets or income that Mr. MacKenzie would have to satisfy any portion of the judgment.” Thus, the present motion in aid of execution.
With one exception — the piano discussed hereafter — it is unclear exactly what assets are sought to be seized. The Court is aware, however, that MacKenzie operated AMP and Arrowhead from some form of office space in the garage at 22 Arrowhead Road. Thus there may be some assets of those two companies still located at that site.
With regard to corporate assets, this Court is of the belief that the proper method to follow is for Abbott to seek the appointment of a receiver, who can be authorized to liquidate any corporate assets, wherever located, and payout the proceeds to the corporate creditors, including, of course, Abbott.
The piano stands in a different position. MacKenzie, as noted above is a concert pianist. Consequently, the piano may be of some considerable economic value, although probably far from approaching the $1 million plus due on the judgment. At the same time, albeit apparently considerably of his own making and doing, MacKenzie appears to have limited assets or ability to gain assets anywhere near sufficient to satisfy the judgment.
Maralyn, but not MacKenzie himself, has moved for a protective order regarding discovery from her husband, seeking to have it limited to inquiry into his assets and those of AMP and Arrowhead, and not her assets.
Additionally, it became apparent at oral argument that MacKenzie is not well. His age is in the 70s. More significantly, on March 23, 2006, Dr. Perry Karfunkel, in the Department of Internal Medicine at the Lahey Clinic in Burlington, Massachusetts, addressed a letter to the Court that reads as follows:
I write regarding Arthur MacKenzie, who has been a patient of mine for many years. He has a significant heart history, as well as a history of hyperten *6 sion. He has been having more and more problems lately and I have seen him today. His blood pressure in the office today was 196/100 initially and 208/98 subsequently. He is at significant risk for having a major stroke as a result of these numbers.
Not surprisingly, recent events involved in his present litigation have been upsetting to Mr. MacKenzie and are almost certainly execerbating his hypertensive condition. I am changing his medication at this time, but he certainly is in no condition to participate in any legal proceedings at this time. Forcing him to do so would put him at significant risk for stroke or potentially even death.
As to all of MacKenzie’s assets, and those of his corporations AMP and Arrowhead, except for the piano, some method ought to be worked out among counsel, including counsel for Maralyn, to inventory his assets and to secure them for use in satisfying the outstanding execution of judgment. The Court will give counsel until April 28, 2006, to do so. Failing that, the Court will, on request of Abbott, direct further appropriate discovery pursuant to Mass.R.Civ.P. Rule 69.
With regard to the piano, while it must be preserved, at this time the Court is of the belief that to remove it from MacKenzie may be far more psychologically devastating to him than any economic benefit to Abbott warrants. The Court, therefore, will apply its equitable powers and attempt to balance the equities with regard to this particular asset.
Motion to Strike Paragraph 5 of Maralyn MacKenzie’s Second Affidavit
This motion is of little import in the present circumstances. The Court in assaying the situation has not been influenced in any way by paragraph 5 of Maralyn’s second affidavit. It, therefore, will take no action on this motion.

Motion for Leave of Court to Withdraw as Counsel

Counsel for MacKenzie, who says he only took on the case to cany it through trial, and who apparently has not been paid, or, at least, far from paid in full, seeks to withdraw from his representation of MacKenzie, AMP and Arrowhead.
It must be clear to everyone that MacKenzie’s need for counsel is at a very high level at this time. He needs advice and guidance on his legal options and on the steps that should be taken with regard to the outstanding execution. It is not enough to say There is nothing there," while continuing to live in a handsome home in one of Massachusetts’s most affluent communities. There are many complicated issues to consider, not the least of which is bankruptcy. Counsel is needed in this process.
Thus, given the present situation, for the near term at least, this Court is not going to leave MacKenzie unrepresented.

ORDER

For the foregoing reasons, the Defendant Maralyn P. MacKenzie’s Motion for Summary Judgment, Paper #80, is ALLOWED; the Plaintiffs Cross Motion for Summary Judgment, Paper #81, is DENIED; the Defendant Maralyn MacKenzie’s Motion to Dissolve Real Estate Attachment, Paper #86, is ALLOWED; the Plaintiff s Ex Parte Motion in Aid of Execution Pursuant to Rule 69, Paper #88, is DENIED without prejudice pending the parties’ efforts to resolve issues consistent with this Memorandum; the Emergency Motion for Protective Order [by Maralyn MacKenzie], Paper #90, is DENIED without prejudice pending the parties’ efforts to resolve issues consistent with this Memorandum; no action is taken on the Motion to Strike Paragraph 5 of Maralyn MacKenzie’s Second Affidavit, Paper #93; and the Motion for Leave of Court to Withdraw as Counsel, Paper #94, is DENIED, without prejudice.

Flndings of fact, rulings of law and an order for judgment pursuant to Mass.R.Civ.P. Rule 54(b) entered on January 3, 2005, and a final judgment on all counts, except for Counts XTV and XV, entered on May 17, 2005. An appeal therefrom was dismissed, with the assent of Arthur MacKenzie, AMP and Arrowhead on September 14, 2005.

Can it truly be said, as Abbott does at p. 11 of his Memorandum, that “Mrs. MacKenzie, who admittedly did nothing to earn the money she received” from her husband thereby received a benefit at Abbott’s expense? Is Abbott saying that a woman’s role in “a traditional marriage” — i.e., a stay-at-home-Mom — does nothing to earn money that she receives from her husband in connection with household expenses?