van Gestel, Allan, J.
This matter is before the Court on the Defendants’ Motion to Dismiss Second Amended Complaint With Prejudice, Paper #20. The motion is opposed. The motion is grounded on Mass.RCiv.P. Rule 12(b)(6).
BACKGROUND
This is a derivátive action filed by Anthony Horbal (“Horbal”) on behalf of the nominal defendant ion Health Holdings, Inc. (“Holdings”), against Holdings’ majority shareholder, J.W. Childs Equity Partners III, L.P. (“J.W. Childs”), and certain members of Holdings’ Board of Directors — Michael N. Cannizzaro (“Can-nizzaro”), Mark J. Tricolli (“Tricolli”) and Edward D. Yun (“Yun”) (collectively the “Director Defendants).
Horbal is a shareholder, director and the founder of Holdings. He describes himself as a pioneer in developing managed healthcare programs in the United States.
Holdings is a Delaware corporation formed in February 2004, to act as a holding company for healthcare plans in multiple states, including plans in Pennsylvania, Ohio and Michigan. Holdings is based in Erie, Pennsylvania.
J.W. Childs is a Delaware limited partnership based in Boston, Massachusetts. J.W. Childs is an investment fund controlled by J.W. Childs Associates, L.P. (“JWC”), a private equity firm, also based in Boston, specializing in leveraged buyouts and recapitalizations of middle-market growth companies. JWC invests through J.W. Childs.
The Director Defendants are members of Holdings’ four-person Board of Directors. They also have financial interests in J.W. Childs. Cannizzaro and Yun are partners of JWC. Tricolli is a Vice President of JWC. The Director Defendants are based in Boston at J.W. Childs’ place of business.
At the center of this action are allegations that J.W. Childs breached an express'contractual commitment to provide, or cause to be provided, to Holdings $180 million in additional funding to enable Holdings to achieve its strategic objectives of acquiring medical managed healthcare plans in Pennsylvania, Ohio and Michigan.
The complaint also charges the Director Defendants with breaches of fiduciary duties to Holdings and its shareholders.
The case turns on an elaborate “Series A Preferred Stock Purchase Agreement" (the “Agreement”)[2] entered into as of November 15, 2004. The Agreement is between and among Holdings (called the “Company” therein) and J.W. Childs (by its general partners, called the “Investors” therein), and Horbal (solely for Sections 3, representations and warranties, and Section 8.2, indemnity) thereof.
Because of its dominance in this case the following sections of the Agreement are quoted in whole or in part here.
1.2 Sale and Purchase. Upon the terms and subject to the conditions contained herein, and in reliance on the representations and warranties set forth in Section 2, each of the Investors shall purchase from the Company, and the Company shall issue and sell to each of the Investors at the Closing (as defined below), the number of shares of Series A-1 Preferred Stock set forth opposite the name of each such Investor in Exhibit A for the purchase price of $10.00 per share, or an aggregate of 2,000,000 shares of Series A-l Preferred Stock for an aggregate purchase price of $20,000,000 (the “Investment Amount’) [3]
* * * * *
1.5 Additional Purchase Commitment Following the Closing, J.W. Childs Equity Partners III, L.P. [“J.W. Childs Equity Partners”) commits to provide, or cause to be provided, to the Company $180,000,000 in additional funding to enable the Company to achieve its strategic objectives in accordance with and subject to the following terms and conditions:
* * * * *
(4) On the Triggering Event [calling for additional funding], J.W. Childs Equity Partners shall purchase, or cause one of its Affiliates to purchase the number of additional shares of Series A Preferred Stock for an aggregate purchase price as set forth in the Triggering Event Notice; provided, that the obligations to purchase Series A Preferred Stock is subject to the (i) the consent of J.W. Childs Equity Partners which may be withheld for any reason or for no reason;
10.1. Amendments, Waivers and Consents. For the purposes of this Agreement and all agreements executed pursuant hereto, no course of dealing between or among any of the parties hereto and no delay on the part of any party hereto in exercising any rights hereunder or thereunder shall operate as a waiver of the hereof or thereof. No provision hereof may be waived otherwise than by a written instrument signed by the party or parties so waiving such covenant or other provision. No amendment to this Agreement may be made without the written consent of the Company and the Investors (in accordance with the immediately succeeding sentence). Any action required to be taken or consents, *382 approvals, votes or waivers required or contemplated to be given by the Investors herein shall require a vote of a majority of the investors based on the relative holdings of capital stock of the Company of the Investors as a group at the relevant time and any such percentage of Investors shall bind all of the Investors. The Company agrees to pay the reasonable fees and out-of-pocket expenses of the Investor’s counsel in connection with the waiver or amendment of any provision of this Agreement and any agreement executed pursuant thereto.
* * * * *
10.3 Governing Law. This Agreement shall be deemed to be a contract made under, and shall be construed in accordance with, the laws of the State of Delaware, without giving effect to the conflict of laws principles thereof.
jfc jfc s|( *
10.8 Integration. This Agreement, including the Exhibits, schedules, documents and instruments referred to herein, constitute the entire agreement and supersedes all other prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof.
After the closing of the Agreement, J.W. Childs never made any additional investments in Holdings; and the three Director defendants, according to the allegations in the complaint, effectively caused Holdings to fail in its strategic plans and fold as an entity.
The Second Amended Complaint has five separate counts: Count One for breach of contract against J.W. Childs; Count Two for breach of the implied covenant of good faith and fair dealing, also against J.W. Childs; Count Three for breach of fiduciary duty of loyalty, good faith and care, against the Director Defendants; Count Four for civil conspiracy, apparently against all defendants; and Count Five for tortious interference with a contract, against the Director Defendants.
DISCUSSION
While Delaware law applies to substantive aspects of what the parties did and what the Agreement mandates, it is Massachusetts Rule of Civil Procedure 12(b)(6) that governs this Court’s actions on the motion to dismiss.
When discussing its own duties regarding a motion to dismiss, the Supreme Judicial Court has reminded this Court that:
The standard of review for a motion to dismiss pursuant to rule 12(b)(6) is well settled. We take as true “ ‘the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiffs favor . . .’ Blank v. Chelmsford Ob/Gyn, P.C., 420 Mass. 404, 407 (1995). In evaluating the allowance of a motion to dismiss, we are guided by the principle that a complaint is sufficient ‘unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.’ Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).” Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 47 (1998). Although errors of law based on the facts alleged will not surmount a rule 12(b)(6) challenge, the plaintiffs burden is “relatively light.” Id., citing Gibbs Ford, Inc. v. United Truck Leasing Corp., 399 Mass. 8, 13 (1987).
Marram v. Kobrick Offshore Funds Ltd., 442 Mass. 43, 45 (2004).
“[A] complaint is sufficient if it ‘sketch[es] the bare silhouette of a cause of action.’ ” Stevens v. Nigel, 64 Mass.App.Ct. 136, 140 (2005).
The recent decision by the Supreme Court of the United States, Bell Atlantic Corp. v. Twombly, 550 U.S. _, 167 L.Ed.2d 929 (2007), has, to date, had no effect on Rule 12(b)(6) law or practice in Massachusetts. Indeed, the SJC’s June 4, 2007, decision in Chokel v. Genzyme Corp., 449 Mass. 272, 273 (2007), cites positively to the familiar Conley v. Gibson formulation, criticized by the majority in Twombly.
It will be in this context that the Court assays the Second Amended Complaint.
Counts One and Two relate to J.W. Childs’ action under the Agreement as they relate to any obligation for additional financing up to $180 million, and Count Five seems to relate to what actions the Director Defendants took in that connection. Consequently, the Court will address those three counts together.
On the issue of whether J.W. Childs had a contractually binding commitment to further fund Holdings to the extent of an additional $180 million the express language of the integrated Agreement must be examined.
Section 1.5(4), in clear and unambiguous language, states: “that the obligations to purchase [additional] Series A Preferred Stock is subject to the . . . the consent of J.W. Childs Equity Partners which may be withheld for any reason or for no reason.” (Emphasis added.) Unless this clause in some way can be limited it appears as a complete bar to Counts One, Two and Five. The ability of J.W. Childs to decline further financing for any reason, or even for no reason, is to this Court the end of the road on these three counts. The duty of good faith and fair dealing cannot be used to overcome or extend a specific contractual provision. See, e.g., Aspen Advisors, LLC v. United Artists Theatre Co., 861 A.2d 1251, 1261 (Del. 2004).
Horbal argues that Section 1.5(4) is limited to an event-by-event analysis and, therefore, should not be read to give J.W. Childs a blanket right to walk away totally from the $180 million commitment. There may be no doubt that this was a commitment, but it was a commitment subject to a specifically stated limitation. That limitation — may be withheld for any reason or for *383 no reason — cannot be altered by this Court providing a cramped reading to the plain words used.
As to Counts Three and Four, however, at this stage at least, this Court cannot rule that it appears beyond doubt that Horbal can prove no set of facts in support of his claim which would entitle him to relief on behalf of Holdings. In short, while perhaps somewhat opaque, the bare silhouette of those causes of action has been sketched.
ORDER
For the foregoing reasons, the Defendants’ Motion to Dismiss Second Amended Complaint With Prejudice, Paper #20, is ALLOWED as to Counts One, Two and Five, and DENIED as to Counts Three and Four.

Although there are some indications to the contrary in the Second Amended Complaint, counsel for Horbal at oral argument made clear that Horbal is relying solely on the Agreement and not on any oral modifications in connection therewith.

Nhe Closing was scheduled for, and apparently did take place, at the offices of McDermott Will & Emery LLP in Chicago on November 15, 2004.